THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANNY
TRAVIS, Defendant-Appellant.

Fourth District    No. 4—00—0771

Opinion filed April 30, 2002.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott Rueter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Defendant Danny Travis appeals the trial court's refusal to allow his request for DNA testing of certain evidence previously appearing in his criminal case. He also argues that certain of his sentences were unconstitutionally imposed. We affirm.

## I. BACKGROUND

A full recitation of the facts of this case can be found in *People v. Travis*, 170 Ill. App. 3d 873, 525 N.E.2d 1137 (1988). On February 24, 1987, Travis was convicted of murder, home invasion, residential burglary, and aggravated criminal sexual assault in connection with the strangulation of an elderly woman in her home. The victim, found on October 30, 1985, had suffered severe injuries to her head; a bloodstained rubber mallet lay about one foot away. The victim had also suffered severe vaginal injury; a bloodstained flashlight was found at her feet. Among other damage to the victim's home, a telephone had been pulled off the wall.

Testimony at the trial indicated that, while under arrest for another murder, Travis confessed to the crimes for which he was eventually convicted. Travis directed police to the scene of the crime and described the method he and an accomplice used to gain entry into the home (through a basement window). He also described shoving a flashlight into the victim's vagina, although he claimed to have done so only after she was dead.

A semen stain had been present on the sheet where the victim was found. According to Travis, another semen stain was found on the victim's body, but this sample was too small to be tested in any manner. Hair was also found at the scene, as well as a fingerprint on the

telephone. The evidence at trial established that the semen on the sheet did not come from Travis or his accomplice. The hair found at the scene did not come from Travis or his accomplice; nor did the fingerprints on the telephone match either those of Travis or his accomplice. Other than testimony regarding the nature of the victim's injuries and death, no other forensic evidence appears to have been introduced at the trial.

On February 26, the jury found defendant qualified for the death penalty, but it was unable to unanimously agree that there were no mitigating factors sufficient to preclude imposition of the death penalty. Sentencing was continued to March 30, 1987. The trial court found the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty, and it sentenced Travis to a term of natural-life imprisonment. The court also found his conduct qualified Travis for an extended-term sentence on the other convictions and sentenced him to 60 years' imprisonment on the aggravated criminal sexual assault and home invasion offenses, and 30 years' imprisonment on the residential burglary offense, with all four sentences to be served concurrently. On appeal, we reduced the sentence on the residential burglary offense to 15 years but otherwise affirmed all of Travis' convictions and sentences. *Travis*, 170 Ill. App. 3d at 893, 525 N.E.2d at 1149.

On March 22, 1999, Travis filed both a petition for postconviction relief, asserting an *Apprendi* issue (see *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000)) and requesting the performance of deoxyribonucleic acid (DNA) testing. On the same date, Travis also filed a separate motion for DNA testing pursuant to section 116—3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/116—3 (West 1998)). After a hearing and arguments of counsel, the trial court denied both motions.

## I. TRAVIS' PETITION FOR POSTCONVICTION RELIEF

■ Because the *Apprendi* issue is without merit, we need not consider whether Travis' petition for postconviction relief was timely filed. Travis' *Apprendi* challenge is without merit. Travis argues that his sentence of natural life for murder and the extended-term portion of his other sentences must be vacated because they were predicated upon the trial court's finding that the crime was accompanied by exceptionally brutal or heinous behavior. See Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—1(a)(1)(b), 1005—8—2(a), 1005—5—3.2(b)(2). The short answer is that this claim is not cognizable in postconviction proceedings. *People v. Helton*, 321 Ill. App. 3d 420, 424, 749 N.E.2d 1007, 1010 (2001). As to Travis' request for DNA testing, this claim is

fairly encompassed within his separate petition for the same, which we address next; therefore, we affirm the denial of his postconviction petition.

## II. TRAVIS' MOTION FOR DNA TESTING

Travis also moved in the trial court to have DNA testing done on previously untested evidence. Travis' motion is not specific as to the evidence he wishes to have tested; presumably (and as considered by the trial court) he would like to test the semen found on the victim and the blood found on the mallet and the flashlight.

■ Section 116—3 states:

"(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint or forensic DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial. Reasonable notice of the motion shall be served upon the State.

(b) The defendant must present a prima facie case that:

(1) identity was the issue in the trial which resulted in his or her conviction; and

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.

(c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:

(1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence;

(2) the testing requested employs a scientific method generally accepted within the relevant scientific community." 725 ILCS 5/116—3 (West 1998).

This section is relatively new; hence, there is not much case law discussing such proceedings. Initially, many courts, including our own (see *People v. Stevens*, 315 Ill. App. 3d 781, 785, 733 N.E.2d 1283, 1286 (2000)), required the defendant to demonstrate that testing carried the possibility of totally exonerating him of the crime. That view has recently been rejected by the supreme court as overly restrictive.

In *People v. Savory*, 197 Ill. 2d 203, 756 N.E.2d 804 (2001), the 19-year-old victim and her 14-year-old brother were found dead in their home. The defendant, also 14 years old, was questioned about a week later. He eventually confessed to the crimes and was convicted of two

counts of murder. However, the defendant's confessions were later held inadmissible by the appellate court and his convictions were reversed. *Savory*, 197 Ill. 2d at 205-06, 756 N.E.2d at 806.

At the defendant's second trial, the State introduced defendant's admissions to several of his friends that he had killed the victims. The State also introduced statements made to police, prior to confession, regarding certain facts surrounding the scene, such as what the victims had prepared for dinner and the fact that a television had been moved from its usual position. Finally, the State introduced physical evidence connecting the defendant to the offense, including evidence that hairs consistent with the defendant's were found in the bathroom sink and tub, that a knife from the defendant's home had blood on it, and that a bloodstain found on a pair of trousers recovered from the defendant's home was of the same blood type as one of the victims. *Savory*, 197 Ill. 2d at 207, 756 N.E.2d at 807. At the conclusion of the trial, the defendant was again convicted of the crimes.

The defendant later sought to have DNA testing done on the bloodstained trousers pursuant to section 116—3. The circuit court denied the motion and the appellate court affirmed, concluding that testing pursuant to section 116—3 is available only in cases where the proposed testing will, by itself, completely vindicate a defendant. *Savory*, 197 Ill. 2d at 209, 756 N.E.2d at 808.

■ The specific issue before the supreme court was the requirement of section 116—3(c)(1) that "the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence." 725 ILCS 5/116—3(c)(1) (West 1998). The supreme court rejected the appellate court's narrower interpretation, holding instead that "evidence which is 'materially relevant' to a defendant's claim of actual innocence is simply evidence which tends to significantly advance that claim." *Savory*, 197 Ill. 2d at 213, 756 N.E.2d at 810-11.

The court then went on to consider the application of section 116—3 to the case. It stated "whether the evidence at issue in this case is 'materially relevant to the defendant's assertion of actual innocence' " "cannot be determined in the abstract. Rather, it requires a consideration of the evidence introduced at trial, as well as an assessment of the evidence defendant is seeking to test." *Savory*, 197 Ill. 2d at 214, 756 N.E.2d at 811. The court affirmed denial of the motion. In so doing, it paid particular attention to the closing arguments of both the State and the defendant. It found that the State had not relied on the bloodstained trousers to a significant degree, that "testimony regarding the possible source of the bloodstain on the pair of trousers was only a minor part of the State's evidence"; but, rather,

the State had relied on the defendant's admissions to the crime and his particular knowledge of the crime scene. *Savory*, 197 Ill. 2d at 214, 756 N.E.2d at 811.

■ Inspection of the record in the present case reveals that the trial court applied the incorrect standard. However, we will affirm if we find that the result would have been the same had the trial court applied the correct standard. We so find. The evidence against Travis in this case was compelling. He made a confession to police, a confession that was corroborated by his detailed knowledge of the crime scene. Further, the jury was told that the semen found at the scene did not come from Travis or his alleged coconspirator. Per *Savory*, DNA testing in the present case does not have the potential to significantly advance Travis' claim of actual innocence.

Defendant directs our attention to the *Hockenberry* and *Rokita* cases, where DNA testing was allowed. *People v. Hockenberry*, 316 Ill. App. 3d 752, 737 N.E.2d 1088 (2000); *People v. Rokita*, 316 Ill. App. 3d 292, 736 N.E.2d 205 (2000). *Rokita*, however, was the classic sole-perpetrator case; if the DNA was not that of the defendant, the defendant did not commit the crime. In *Hockenberry*, there was a suggestion at trial that the semen which was present was that of the defendant (that defendant could not be eliminated as the possible source). *Hockenberry*, 316 Ill. App. 3d at 757, 737 N.E.2d at 1092. The key case is *Savory*, itself, where the more important evidence (as opposed to the "minor" physical evidence) "includes defendant's inculpatory comments made to several friends only hours after the murders occurred" and "statements made by defendant to police in which defendant revealed a knowledge of the crime scene." *Savory*, 197 Ill. 2d at 216, 756 N.E.2d at 812. We have all of that in this case plus more, a confession that apparently defendant makes no attempt to disavow. There was a confession in *Savory*, but it was held to be inadmissible.

■ For future reference, we note the parties engaged in some dispute over chain-of-custody issues before the trial court. The court did predicate dismissal on these grounds; indeed, the court evinced a willingness to allow Travis some limited amount of discovery on the issue, all else being equal. We find this course to be a sound one. It asks too much to require petitioning defendant in these cases to plead and prove proper chain of custody at the outset, for the evidence at issue will undoubtedly have been within the safekeeping of the State, not the defendant. The trial court may allow limited discovery in an appropriate case.

## III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.