THIRD DIVISION
October 29, 2008

No. 1-05-2205

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 89 CR 13613 |
| | ) | |
| KEVIN BAILEY, | ) | The Honorable |
| | ) | Clayton J. Crane, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GREIMAN delivered the opinion of the court:

Following a jury trial, defendant Kevin Bailey was found guilty of first degree murder, armed robbery and two counts of burglary and sentenced to concurrent terms of 80 years in prison for murder, 30 years for armed robbery and 7 years for burglary. We affirmed defendant's conviction and sentence on appeal. See People v. Bailey, 259 Ill. App. 3d 180 (1994). Defendant subsequently filed a motion for forensic testing not available at trial pursuant to section 116-3 of the Code of Criminal Procedure (the Code) (725 ILCS 5/116-3 (West 2004)). The trial court denied the motion sua sponte and the court's ruling was not appealed. Defendant then filed a second section 116-3 motion, which the trial court also denied sua sponte. Defendant appealed the denial of his second 116-3 motion, contending that he presented a prima facie case that he was entitled to forensic testing in his motion and that section 116-3 does not provide for the "summary dismissal" of a motion filed pursuant to that section. Accordingly, defendant asked that we remand his case for further proceedings. In People v. Bailey, No. 1-05-2205 (May 30, 2007) (unpublished order pursuant to Supreme Court Rule 23), we found that the trial court's

summary dismissal of his section 116-3 motion, though improper, should be subjected to a harmless error analysis.  In reviewing defendant's motion, we concluded that defendant's motion may have been deficient in certain respects.  However, relying on People v. O'Connell, 365 Ill. App. 3d 872 (2006), we found we were unable to conclude that defendant's motion was patently incurable, and, accordingly, remanded the case for further proceedings.  Thereafter, the supreme court denied the State's petition for leave to appeal, but pursuant to its supervisory authority, directed us to vacate our judgment and reconsider this case in light of its recent decision in People v. O'Connell, 227 Ill. 2d 31 (2007).  People v. Bailey, 226 Ill. 2d 618 (2008).  After vacating our original opinion and reconsidering in light of O'Connell, we find that a different result is warranted and affirm the trial court order denying defendant's section 116-3 motion.

On June 1, 1989, the body of the victim, 69-year-old Lula Mae Woods, was found in a pool of blood on the floor of her garage.  Police called to the scene found two sets of keys and a purse strap near the victim's body and a Domino's Pizza ballcap under the victim's body.  Police also located the victim's purse, bank passbook and deposit slips, which indicated that she had deposited $354 that day, and a knife later identified as the murder weapon in the alley a block away from the victim's body.

Police first spoke with codefendant Corey Batchelor regarding the murder and then attempted to locate defendant. Defendant was taken to the police station on June 7, 1989, where he signed a court-reported statement which indicated that codefendant had suggested robbing the victim on June 1 and had given defendant the knife, that defendant struggled with and eventually stabbed the victim to gain possession of her purse, and that before the incident, codefendant was

wearing a Domino's Pizza ballcap but was not wearing the ballcap after the incident.

The parties stipulated that fingerprints obtained from several items in the victim's purse did not match the prints of defendant or codefendant, that no useable fingerprints were secured from the purse, passbook, deposit slips, purse strap or knife, and that an eyebrow hair found in the ballcap was not consistent with samples taken from defendant or codefendant.

The jury found defendant guilty of first degree murder, armed robbery and burglary, and defendant was sentenced to concurrent terms of 80 years in prison for murder, 30 years for armed robbery and 7 years for burglary.

On direct appeal, defendant contended that the trial court erred in denying a pretrial motion to quash his arrest and to suppress his statements to the police, that he was denied a fair hearing on his motion to quash his arrest and suppress his statements, that the State improperly shifted the burden of proof during closing arguments and that his sentence was excessive. We affirmed defendant's conviction and sentence.

On February 10, 2004, defendant filed a first pro se motion for DNA testing pursuant to section 116-3 of the Code of "certain articles of the victim's clothing." On March 19, 2004, the court denied defendant's motion, noting that "there is no indication that any fluid of any perpetrator in this act would be available ***. There is no indication of blood, no indication of any cuts on the perpetrator. The defendant did in fact confess *** and it was affirmed by the Appellate Court."

Meanwhile, on February 28, 2005, defendant filed a pro se petition under section 2-1401 (735 ILCS 5/2-1401 (West 2004)). The parties agree that the motion was never ruled upon.

3

On March 31, 2005, defendant filed a second pro se section 116-3 motion for DNA testing of "(1) a baseball cap and the victim's clothes and purse (for traces of blood and/or perspiration); (2) a knife for same; (3) the victim's nailclippings; (4) eyebrow and head hairs." In the motion, defendant alleged that "identity was the issue in the trial which resulted in his conviction," that the evidence he sought to have tested was admitted into evidence, was in the circuit court clerk's custody, had been subject to a sufficient chain of custody and "the result of the testing has the scientific potential to produce 'conclusive' findings that movant was not the donor and that a third-unknown party was[,] which would wholly exonerate movant altogether." Defendant specifically requested "short-tandem-repeats," "polymerase chain reaction" and "mitochondrial" testing.

On April 22, 2005, the trial court docketed the matter and appointed the public defender to represent defendant. On June 2, 2005, at a hearing at which the State's attorney was present but the public defender was not present, the court denied defendant's second section 116-3 motion, noting, as it had in its denial of defendant's first section 116-3 motion, that "there is no indication of any fluid of any perpetrator would be available in this case" and that "defendant, in fact, confessed to this matter."

On June 29, 2005, defendant filed a notice appealing the dismissal of his second section 116-3 motion.

As a preliminary matter, we must address the State's contention that this appeal is procedurally barred. The State notes that the court's March 19, 2004, order denying defendant's first section 116-3 motion was a final, appealable order. See People v. Savory, 197 Ill. 2d 203,

1-05-2205

210-11 (2001). It further observes that the order was not appealed, nor was a motion directed against the order filed in the trial court within 30 days as is required by Supreme Court Rule 606(b) (188 Ill. 2d R. 606(b)). The State argues:

> "Therefore, when defendant filed a second motion for forensic testing over a year later on March 31, 2005, and the basis for the motion remained the same as his first motion for DNA testing, it does not serve to toll the notice of appeal deadline that expired in April of 2004. In the alternative, defendant should not be allowed to circumvent the Supreme Court rule by filing the exact same motion one year later and then appealing therefrom."

Defendant correctly notes that, contrary to the State's assessment, his second section 116-3 motion is not identical to his first. Defendant further responds that section 116-3 does not restrict the number of motions for forensic testing that may be filed. Defendant's second section 116-3 motion, he argues, was a permissible successive motion. Because he filed a notice of appeal of the dismissal of that motion within 30 days, defendant argues that he is not procedurally barred from bringing this appeal. We agree with defendant's assessment.

Neither party has cited and our independent research has not revealed a case considering whether successive section 116-3 motions are permissible. We must, therefore, begin our analysis of this issue with an examination of the statutory language.

> "The cardinal principle of statutory construction is to ascertain and give effect to the intention of the legislature. [Citation.] The language used by the legislature is the best indicator of legislative intent, and thus a court's inquiry appropriately

5

begins with the statutory text. [Citation.] The statutory language must be given its plain and ordinary meaning, and when the terms used by the legislature are clear and unambiguous, it is not necessary to resort to other aids of construction." People v. Schutz, 344 Ill. App. 3d 87, 91 (2003).

Section 116-3 provides:

"(a) A defendant may make a motion before the trial court that entered judgment of conviction in his or her case for the performance of *** forensic DNA testing *** on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial. Reasonable notice of the motion shall be served upon the State.

(b) The defendant must present a prima facie case that:

(1) identity was the issue in the trial which resulted in his or her conviction; and

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.

(c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:

(1) the result of the testing has the scientific potential to

6

produce new, noncumulative evidence materially relevant to the

defendant's assertion of actual innocence even though the results

may not completely exonerate the defendant;

(2) the testing requested employs a scientific method

generally accepted within the relevant scientific community." 725

ILCS 5/116-3 (West 2004).

There is no language in section 116-3 indicating that the legislature intended to limit the number of motions for forensic testing that a defendant could file. If the legislature had wished to impose such a limit, it could have easily done so. "It is not the prerogative of this court to read into the statute limitations that the legislature chose not to include." People v. Rokita, 316 Ill. App. 3d 292, 303 (2000). Accordingly, we conclude that section 116-3 simply does not impose a limit on the number of forensic testing motions a defendant may file. We find, therefore, that defendant's second section 116-3 motion was permissible and, because he filed a notice of appeal within 30 days of its dismissal, this appeal is not procedurally barred.

We will next address defendant's contention that the court erred in "summarily dismissing" his motion without providing him notice of its sua sponte motion to dismiss or an opportunity to respond to that motion. Defendant asks that we remand his case for further adversarial proceedings on his section 116-3 motion.

In O'Connell, the supreme court clarified that "the term 'summary dismissal' is unique to the Post-Conviction Hearing Act (725 ILCS 5/122-2.1 (West 2004))." O'Connell, 227 Ill. 2d at 38, citing People v. Vincent, 226 Ill. 2d 1, 11 (2007). Accordingly, when the trial court

7

dismisses a section 116-3 motion based on the deficiency of the allegations raised on the face of the motion without receiving responsive pleadings from the State or providing notice to the defendant, it does not rule in a summary fashion; rather, it sua sponte denies the motion. O'Connell, 227 Ill. 2d at 38. The court confirmed the propriety of this practice, stating " '[a] trial court may, on its own motion, dispose of a matter [sua sponte] when it is clear *** that the requesting party is not entitled to relief as a matter of law.' " O'Connell, 227 Ill. 2d at 38, quoting Vincent, 226 Ill. 2d at 12.

Accordingly, having determined that the trial court did not summarily dismiss defendant's section 116-3 motion but rather denied the motion sua sponte, we must now consider whether his motion was defective. Our review is de novo because "the trial court's decision regarding such a motion is not based upon its assessment of the credibility of the witnesses but on its review of the pleadings and the trial transcripts." People v. Jones, 334 Ill. App. 3d 61, 63 (2002); see also O'Connell, 227 Ill. 2d at 35.

> "Section 116-3 allows a defendant to have physical evidence subjected to
> scientific testing that was not available at the time of trial if certain requirements
> are met. To obtain testing, a defendant must present a prima facie case that
> identity was the issue at his trial and that the evidence to be tested has been under
> a secure chain of custody. Testing is permitted if, among other requirements, 'the
> result of the testing has the scientific potential to produce new, noncumulative
> evidence materially relevant to the defendant's assertion of actual innocence.' "
> Savory, 197 Ill. 2d at 208, quoting 725 ILCS 5/116-3(c)(1) (West 1998).

8

Pursuant to O'Connell, before we review defendant's motion to see if he has met his burden of presenting a prima facie case that identity was at issue and the items that he seeks to test were subjected to a secure chain of custody, we must first determine whether the statute applies. O'Connell, 227 Ill. 2d at 36 ("Before any analysis of the statutory requirements to allow DNA testing, the initial issue is the applicability of the statute"). The O'Connell court clarified that section 116-3 applies only to defendants who have contested their guilt at trial and not to those who have pled guilty. O'Connell, 227 Ill. 2d at 37 (concluding that "the appellate court erroneously determined section 116-3 permits a defendant who pleads guilty to argue that identity was at issue, despite his guilty plea"). In this case, although defendant confessed and admitted his role in the robbery and shooting death of Lula Mae Woods, he never pled guilty; rather, he contested his guilt at trial. Accordingly, we find that the statute applies and, thus, defendant is entitled to seek relief pursuant to section 116-3 of the Code. O'Connell, 227 Ill. 2d at 37.

Having reviewed the threshold issue regarding the applicability of the statute, we must now determine whether defendant has established a prima facie case that identity was at issue in his trial and that the evidence which he seeks to test was subject to a secure chain of custody. Concerning identity, in his motion, defendant simply provided a conclusory statement that identity was the central issue at his trial. While case law suggests that this conclusory statement was not sufficient to satisfy defendant's obligation to present a prima facie case, evidence and argument presented at a hearing on the motion would have conclusively demonstrated that identity was, in fact, a central issue at trial. See People v. Gibson, 357 Ill. App. 3d 480 (2005)

9

(appellate court acknowledged that the defendant's bare assertion that identity was a central issue at trial in his motion rendered the motion deficient but found that evidence and argument presented at a hearing on the motion, that found support in the record, was sufficient to fulfill the defendant's obligation to present a prima facie case that identity was the central issue at trial). Indeed, the record reflects that at trial, defense counsel adamantly contested defendant's guilt notwithstanding defendant's confession. During closing argument, defense counsel argued that "[defendant] was not there" and suggested that defendant's confession was the product of police coercion. Accordingly, although defendant's motion makes a conclusory statement about identity, a review of the record conclusively shows that identity was at issue in his trial.

Similarly, concerning the chain of custody, in his motion, defendant stated that the evidence to be tested had been kept under a proper chain of custody. He further stated that each piece of evidence to be tested was admitted at trial. Though these assertions are certainly conclusory, case law suggests that they were sufficient to establish a prima facie case that the evidence had been kept under a proper chain of custody. See People v. Johnson, 205 Ill. 2d 381, 394 (2002) (finding that the defendant had presented a prima facie case that the Vitullo rape kit he sought to have tested had been under a secure chain of custody, reasoning "[t]hough the State contends that the defendant has presented no evidence of the kit's location since his 1984 trial, such evidence would not be available to the defendant. The Vitullo kit, as a piece of real evidence admitted at trial, would have remained in the custody of the circuit court clerk after the defendant's conviction"); People v. Travis, 329 Ill. App. 3d 280, 285 (2002) (noting that "[i]t asks too much to require petitioning defendant in these cases to plead and prove proper chain of

custody at the outset, for the evidence at issue will undoubtedly have been within the safekeeping of the State, not the defendant. A trial court may allow limited discovery in an appropriate case"); People v. Sanchez, 363 Ill. App. 3d 470, 478 (2006) (relying on Johnson and Travis, finding that the defendant's motion, which simply stated that the evidence to be tested had been in the continuous possession of law enforcement agencies "is facially sufficient with respect to the chain-of-custody requirement"); cf. Jones, 334 Ill. App. 3d at 65 (in his motion, the defendant stated that the murder weapon, a knife, had been subjected to a sufficient chain of custody, and to the motion, he attached a request addressed to the medical examiner's office for the knife, a nightgown and the victim's fingernail clippings; appellate court found that the defendant had not established a sufficient chain of custody and distinguished the case before it from Johnson, in which the Vitullo kit had been introduced into evidence at trial; on the contrary, in the case before the Jones court, the evidence to be tested "may or may not have been collected and *** may or may not be in the custody of the State").

We now address the issue of material relevance. In accordance with the statute, if a defendant can establish his prima facie case, it is then incumbent upon the circuit court to determine whether "the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence." 725 ILCS 5/116-3(c)(1) (West 2004); see also Savory, 197 Ill. 2d at 208; People v. Urioste, 316 Ill. App. 3d 307, 311 (2000). "[E]vidence which is 'materially relevant' to a defendant's claim of actual innocence is simply evidence which tends to significantly advance that claim" and "section 116-3 is not limited to situations in which scientific testing of a certain piece of evidence would

11

completely exonerate a defendant." Savory, 197 Ill. 2d at 213-14. A determination of whether materially relevant evidence of actual innocence would result from forensic testing " 'requires a consideration of the evidence introduced at trial, as well as an assessment of the evidence defendant is seeking to test.' " Travis, 329 Ill. App. 3d at 284, quoting Savory, 197 Ill. 2d at 214.

In his motion, defendant indicated that he sought testing of: "(1) a baseball cap and the victim's clothes and purse (for traces of blood and/or perspiration); (2) a knife for same; (3) the victim's nail clippings; (4) eyebrow and head hairs." He further asserted that the testing had the potential to produce materially relevant evidence, explaining: "the result of the testing has the scientific potential to produce 'conclusive' findings that movant was not the donor and that a third-unknown party was which would wholly exonerate movant altogether."

The State, relying on People v. Savory, 197 Ill. 2d 203 (2001), contends that the evidence defendant seeks to test is not materially relevant to his claim of actual innocence. In Savory, the defendant, following a second jury trial, was convicted of two counts of murder. At trial, the State had presented evidence that defendant had made incriminating admissions to three of his friends as well as to the police about the murders. Savory, 197 Ill. 2d at 206-07. In addition, the State presented physical evidence that connected the defendant to the crimes, including evidence that hairs consistent with the defendant's were found in the bathroom sink and tub at the crime scene, that a knife recovered from the defendant's home was covered in blood, and that a bloodstain found on a pair of pants recovered from the defendant's home was the same blood type as one of the victims. Savory, 197 Ill. 2d at 207. Following his conviction, the defendant filed a motion pursuant to section 116-3 of the Code, seeking forensic testing of the bloodstained

pants, contending that testing would show that the blood did not match the victim's blood type and would thus have eliminated one of the pieces of physical evidence that the State used to secure his conviction. Savory, 197 Ill. 2d at 208. In denying testing, the supreme court found that the evidence that the defendant sought to test was not materially relevant to his claim of innocence, explaining that its

> "examination of the record shows that the testimony regarding the possible source of the bloodstain on the pair of trousers was only a minor part of the State's evidence in this case. A far greater portion of the State's case consisted of [the] defendant's [admissions, which demonstrated his] knowledge of certain features of the crime scene *** which only the offender could have known." Savory, 197 Ill. 2d at 214-15.

Accordingly, the court found that "a test result favorable to defendant [on the bloodstained pants] would not significantly advance his claim of actual innocence, but would only exclude one relatively minor item from the evidence of guilt marshaled against him by the State." Savory, 197 Ill. 2d at 215.

The State contends that like Savory, it is clear "that the majority of this case was based upon defendant's confession and his knowledge of the crime scene, and not on the pieces of evidence defendant seeks to have tested." We agree. In this case, the State relied on defendant's detailed confession to secure his conviction. As in Savory, the physical evidence which defendant seeks to subject to forensic testing played a "minor" role in the State's case against him. Savory, 197 Ill. 2d at 215. Indeed, at trial, the parties stipulated that fingerprints obtained from several items in the victim's purse did not match the prints of defendant or codefendant,

13

and that an eyebrow hair found in the baseball cap found near the victim's body was not consistent with samples taken from defendant or codefendant. See, e.g., Travis, 329 Ill. App. 3d at 284-85 (finding that DNA testing of the semen found on the victim of a criminal sexual assault would not materially advance the defendant's claim of actual innocence where the defendant confessed to the assault and the State relied heavily on that confession to secure his conviction and the jury had been informed that the semen the defendant sought to subject to additional testing did not come from the defendant). The parties further stipulated that no useable fingerprints were secured from the purse, passbook, deposit slips, purse strap or knife and no further testing was done on these items. Based on the evidence presented at trial, we thus find that forensic testing would not materially advance defendant's claim of actual innocence.

Accordingly, because the evidence defendant seeks to test is not materially relevant to his claim of innocence, we find that the trial court did not err in denying his pro se section 116-3 motion sua sponte. O'Connell, 227 Ill. 2d at 38 (holding that a trial court does not err in sua sponte denying a defendant's motion for section 116-3 testing when the motion is insufficient as a matter of law).

For the foregoing reasons, we affirm the trial court order denying defendant's pro se section 116-3 motion.

Affirmed.

KARNEZIS, J., and CUNNINGHAM, J., concur.