# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Barrow*, 2011 IL App (3d) 100086

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD BARROW, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-10-0086 |
| Filed | September 7, 2011 |
| Rehearing denied | September 26, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an appeal from the denial of defendant's motion under section 116-3 of the Code of Criminal Procedure for scientific testing of various items of physical evidence admitted in his 1985 trial for murder and other offenses, the appellate court affirmed the denial of defendant's requests for testing of a seat cushion, the victim's clothes and his shoes and it held that allowing the State to call a witness at the hearing on the motion was not error. |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 84-CF-74; the Hon. Cynthia M. Raccuglia, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Allen H. Andrews (argued), of State Appellate Defender's Office, of Springfield, for appellant. |
|---|---|
| | Brian Towne, State's Attorney, of Ottawa (Terry A. Mertel and Justin A. Nicolosi (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion. Justices Schmidt and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Ronald Barrow brought a motion under section 116-3 of the Code of the Criminal Procedure of 1963 (Code) seeking scientific testing of various items of physical evidence admitted against him in his 1985 trial for murder and other offenses relating to the murder. 725 ILCS 5/116-3 (West 2008). The trial court granted the motion in part and denied it in part. He appealed the denials. We affirm.

¶ 2                                    FACTS

¶ 3    Defendant Ronald Barrow was charged with murder (Ill. Rev. Stat. 1983, ch. 38, ¶¶ 9-1(a)(1), (a)(2), (a)(3)), armed robbery (Ill. Rev. Stat. 1983, ch. 38, ¶ 8-2(a)), residential burglary (Ill. Rev. Stat. 1983, ch. 38, ¶ 19-3) and burglary (Ill. Rev. Stat. 1983, ch. 38, ¶ 19-1), for the 1984 murder of Joseph O'Berto in his Cedar Point home. O'Berto was found in the basement with a fatal gunshot wound to his head. A seat cushion had been used to muffle the bullet shot. A piece of plywood with shoe print impressions was also found in the basement near O'Berto's body. The facts of this case are set forth in detail in *People v. Barrow*, 133 Ill. 2d 226 (1989). We will only repeat those necessary for the issues in this appeal and present the facts that have occurred subsequent to the appeal that are pertinent to our discussion.

¶ 4    The trial record reveals that in pretrial proceedings, Barrow moved for testing of a bloodstain from his shoes seized from his Maryland home two months after the murder, and for ballistics. The trial court granted Barrow's motion and appointed Louis Vitullo as an expert for blood, fibers, body fluids, tissues, fingerprints, and other like matters. The Illinois State Police (ISP) laboratory conducted a number of tests on the physical evidence. The lab reports demonstrated that there was no blood on a suit, raincoat, or gloves seized from Barrow's house. A pair of shoes that were also seized had a bloodstain on the heel of the left shoe. Tests on the seat cushion revealed hairs, fibers, and debris which did not match Barrow's clothes. Tests also indicated that the bullet hole was surrounded by "apparent

blood staining." Hairs found on the cushion did not match either O'Berto or Barrow. Fibers on O'Berto's socks, pants and shirt did not match those from Barrow's clothes.

¶ 5 The first lab report on the plywood and Barrow's shoes, dated June 1984, stated that the impressions on the plywood and Barrow's shoes were a similar size and pattern but Barrow's shoes were noticeably more worn than the shoes that made the impression. The report also indicated that Barrow's left shoe showed damage on the sole in the shape of an arc that was not present on the plywood impression. A supplemental report in July 1984 concluded that two of the shoe print impressions could have been made by Barrow's shoes but no positive identification was possible. The test also concluded that Barrow's shoes could not be eliminated as a match. A May 1985 lab report on Barrow's shoes and the plywood stated that "additional examination of [the plywood] using analog/digital image processing revealed no discernible detail unavailable to routine visual examination." The blood spot on Barrow's left shoe was analyzed, which demonstrated that the blood matched O'Berto's and Barrow's same blood type.

¶ 6 Testimony at trial established that O'Berto's bedroom was ransacked and other rooms in the house appeared to have been searched. In the living room, a chair was missing the seat cushion and was moved from its usual position. A gray sock was on the dining room floor. Its mate was found on O'Berto's body, which was discovered lying in a pool of blood. A spent bullet was recovered near the body, along with the plywood. Money and a bank book were missing from the house. The State presented various evidence establishing that Barrow was in the LaSalle-Peru area at the time the murder occurred.

¶ 7 The State's witness, Harold Wrona, who was incarcerated in a Maryland prison with Barrow prior to the O'Berto murder, testified to various incriminating statements Barrow made to him regarding the crime. Wrona stated that Barrow said he whipped, slapped, and beat O'Berto before shooting him. A taped conversation between Wrona and Barrow about the murder, in which Barrow recounted how he committed the crime, was played for the jury. In that conversation, Barrow stated that he handcuffed O'Berto immediately upon forcing his way into O'Berto's house and that he wore gloves the entire time he was in the house. He again stated that he whipped and beat O'Berto.

¶ 8 The State offered into evidence the plywood from O'Berto's basement and the shoes recovered from Barrow's home. The State presented Robert Hunton, a forensic scientist with the Bureau of Scientific Services of the Illinois Department of Law Enforcement, as an expert witness. He examined the seat cushion and photographs of the footwear impressions on the plywood. Hunton testified the size and pattern of Barrow's shoes matched two impressions on the plywood. The shoes that made the impressions on the plywood were not well worn while Barrow's shoes were worn and had a damaged sole in that one shoe had an arc mark on it. He could not offer a positive identification. There were other unmatched impressions on the plywood. The left shoe had a bloodstain on its heel which matched both Barrow's and the victim's blood type. An autopsy report entered into evidence concluded that O'Berto died as a result of a gunshot wound to his head, that he suffered no other injuries, and had no defensive wounds. The defense rested without presenting a case. In its closing argument, the State suggested that a struggle had ensued at the murder scene while the defense contended that the evidence did not support the occurrence of a struggle.

¶ 9        The jury found Barrow eligible for the death penalty and the trial court sentenced him death for the murder convictions, and to terms of imprisonment of 30 years for armed robbery and 15 years for residential burglary. No sentence was entered on the burglary conviction. Following his convictions, Barrow filed a posttrial motion, arguing his rights to effective assistance and due process were denied. He contended, in part, that his attorney was ineffective for failing to call an expert to exclude his shoes based on a comparison with the impressions found on the plywood. The trial court denied his motion. Barrow filed a direct appeal from his conviction and sentence, in which he argued, in part, that his trial attorney was ineffective for failing to present a defense, and that had his attorney presented a defense, Barrow intended to call a witness who could testify that the shoe impression found at the murder scene could not have been made by the shoes recovered from his house. The supreme court rejected Barrow's ineffective assistance and other claims and affirmed his conviction and sentence. *Barrow*, 133 Ill. 2d at 286. His death sentence was later commuted to a term of natural life.

¶ 10       In 1991, Barrow filed a postconviction petition, and in June 1992 and May 1993, he filed motions to obtain temporary custody of his seized shoes and the plywood in order to obtain testing. Barrow submitted that the State's forensics expert at trial, Hunton, testified that one of Barrow's shoe had damage on the sole in the form of an arc, and that if the arc was a manufacturing defect, Barrow's shoe could not have made the impression on the plywood. The State responded that the shoes had already been tested and that trial counsel's failure to introduce expert testimony regarding the testing had been determined on direct appeal not to be ineffective assistance of counsel. In reply, Barrow submitted that the shoes and plywood were never examined. The trial court denied Barrow's motion, finding that the shoes and plywood had been previously examined. Barrow moved for reconsideration and attached to his motion an affidavit from Vitullo, the forensics expert appointed to assist the defense, in which he attested that he did not examine the footprint evidence and that shoe print analysis was beyond the scope of his expertise. Barrow also attached an affidavit from counsel who had been appointed to assist in pretrial proceedings who averred that the defense rested before the shoes could be examined and compared to the plywood.

¶ 11       Barrow filed an amended postconviction petition in October 1993, pointing to inconsistencies in the testimony of the State's witness, Wrona, regarding Barrow's account of the murder as support for his claims of error. He submits that while he "bragged" to Wrona that he hit and whipped O'Berto, as heard on the overhear, the autopsy concluded the only injury O'Berto received was the gunshot wound to his head. He also highlighted Hunton's trial testimony where he admitted that he could not compare Barrow's seized shoes to the plywood impressions because the shoes at the time of seizure were worn and damaged. Barrow argued his trial counsel was ineffective for failing to offer evidence that the fibers collected from O'Berto's clothes and the seat cushion did not match those from Barrow's clothes, and that prints at the scene did not match Barrow's. The trial court dismissed O'Berto's amended postconviction petition and its dismissal was affirmed on appeal. *People v. Barrow*, 195 Ill. 2d 506 (2001).

¶ 12       In September 2008, Barrow filed a motion for scientific testing of fingerprint, shoe print, ballistic and deoxyribonucleic acid (DNA) evidence pursuant to section 116-3 of the Code.

725 ILCS 5/116-3 (West 2008). In his motion, Barrow alleged that the sole issue at trial was the perpetrator's identity and that, at the time of trial, the requested evidence had either not been tested or the requested testing was not yet available. He further alleged that there was a sufficient chain of custody. In his motion, Barrow sought testing on all the blood, hair and saliva found at the scene, and submission to the federal database. He also requested DNA testing of the bloodstain found on his shoe, the seat cushion, and O'Berto's shirt, pants and socks. Barrow further sought to have three unidentified fingerprints from the scene submitted to the Integrated Automated Fingerprint Identification System (IAFIS) and the bullet found at the scene submitted to the Integrated Ballistic Identification System (IBIS). Barrow requested that a defense expert in Michigan be permitted to examine his shoes and to compare them with shoe impressions on the plywood found near O'Berto's body. He also requested that the shoe prints be sent to a shoe print database in England that was not available at the time of trial. The State objected to Barrow's requests for further testing of the seat cushion, O'Berto's clothes, Barrow's shoes, and the shoe impressions on the plywood. The State had no objections to the requests to further test the bloodstain on Barrow's shoe or to submit the fingerprints or projectile to the appropriate databases.

¶ 13    A hearing ensued on Barrow's motion. The State presented William Anselme as a witness. He was a forensic biologist who conducted DNA tests at an ISP laboratory. He testified as follows. He briefly reviewed the original lab reports concerning the cushion which indicated an initial examination had been performed on it. Anselme assumed it had been examined for blood, body fluids and hair. There was no finding of blood in the reports and he was not certain any blood testing was done in 1984, although the reports indicated the cushion was examined for "biology." He viewed the cushion the day of the hearing but did not perform a laboratory examination of it. He saw a stain around the bullet hole that could be blood but did not see anything else he would test. In Anselme's opinion, only O'Berto's blood would be found on the cushion, which would not be probative of who murdered him. He admitted he was not an expert at identifying stains on pieces of evidence. If this case were new, he would defer testing of the cushion unless he had evidence that the perpetrator had bled or left DNA on the cushion from a struggle. He considered it possible that another person's DNA would be on the cushion but that it would not necessarily be linked to the murder and could be from anyone who had handled or used the cushion. If he were to test the cushion, he would test random areas of it.

¶ 14    Anselme also expressed reservations about testing O'Berto's clothes. He explained that because of its huge workload, the ISP lab refuses to test all the evidence submitted to it by the police. According to Anselme, if this case were new, the lab would not accept or test O'Berto's clothes unless it had information that the perpetrator had bled, for example, from a struggle at the scene. Without such information, test results would not be probative. Anselme also expressed concerns that he would be unable to identify what stains on O'Berto's clothes would be from a suspect and which would be from O'Berto, although he acknowledged that he had not examined O'Berto's clothes for stains before the hearing. He stated such an examination would be time consuming, expensive, and could be like looking for a needle in a haystack. He would need help identifying whether any stains had evidentiary value. The ISP lab employed blood spatter experts and people who would be able to examine the clothes and cushion to determine whether there were any stains with

evidentiary value.

¶ 15    The trial court ordered testing of the items to which the State had not objected, including DNA testing of the bloodstain on Barrow's shoe and submission of the fingerprints and bullet to the databases. The State agreed to search for hair samples that had been submitted for testing at the time of trial. The trial court denied Barrow's request for testing of the seat cushion and O'Berto's clothes but stated it would reconsider the requests if Barrow could offer specifics concerning what probative value testing of the items would produce. The trial court also denied Barrow's request for further testing of the shoes, finding the requested testing was not available under the statute. Barrow filed a motion to reconsider, which the trial court denied. In this motion, Barrow argued that testing on the shoes by his expert, a former product development manager of the manufacturer who had agreed in 1984 to examine the shoes, could establish that the arc damage on one of his shoes was a manufacturing defect. Barrow also argued the State contended at trial that a struggle had occurred at the scene. He points to Wrona's testimony, the taped conversation he had with Wrona, and the State's closing argument as support for his argument. The trial court denied the motion to reconsider. Barrow appealed the denial of his motion for section 116-3 testing.

¶ 16                                                            ANALYSIS

¶ 17    There are three issues for our consideration on appeal: whether the trial court erred when it allowed the State to offer a witness at the section 116-3 hearing; whether the trial court erred when it denied Barrow's section 116-3 motion for testing of the seat cushion and O'Berto's clothes; and whether the trial court erred in denying Barrow's request for further testing of his shoes.

¶ 18    We begin with the first issue, whether it was error for the trial court to allow the State to present a witness at the section 116-3 hearing. Barrow argues that the presentation of witnesses is not contemplated by the statute and that the trial court's decision to allow the State to call a witness at the section 116-3 hearing was in error. He asserts that the statute discusses pleadings, not witnesses, and thus its plain language prohibits the use of witnesses in determining a motion. He submits that prior interpretations of the statute consistently maintain that courts should not expand it beyond its plain language.

¶ 19    Section 116-3 is entitled, "Motion for fingerprint, Integrated Ballistic Identification System, or forensic testing not available at trial regarding actual innocence." It states:

"(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint, Integrated Ballistic Identification System, or forensic DNA testing, including comparison analysis of genetic marker groupings of the evidence collected by criminal justice agencies pursuant to the alleged offense, to those of the defendant, to those of other forensic evidence, and to those maintained under subsection (f) of Section 5-4-3 of the Unified Code of Corrections, on evidence that was secured in relation to the trial which resulted in his or her conviction, and:

(1) was not subject to the testing which is now requested at the time of trial; or

(2) although previously subjected to testing, can be subjected to additional testing

utilizing a method that was not scientifically available at the time of trial that provides a reasonable likelihood of more probative results. Reasonable notice of the motion shall be served upon the State.

(b) The defendant must present a prima facie case that:

(1) identity was the issue in the trial which resulted in his or her conviction; and

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.

(c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interest in the integrity of the evidence and the testing process upon a determination that:

(1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence even though the results may not completely exonerate the defendant;

(2) the testing requested employs a scientific method generally accepted within the relevant scientific community.

(d) If evidence previously tested pursuant to this Section reveals an unknown fingerprint from the crime scene that does not match the defendant or the victim, the order of the Court shall direct the prosecuting authority to request the Illinois State Police Bureau of Forensic Science to submit the unknown fingerprint evidence into the FBI's Integrated Automated Fingerprint Identification System (AIFIS) [*sic*] for identification." 725 ILCS 5/116-3 (West 2008).

¶ 20    The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Savory*, 197 Ill. 2d 203, 212 (2001). The language of the statute is the best indicator of legislative intent and it must be given its plain and ordinary meaning. *Savory*, 197 Ill. 2d at 212-13. A court should not read into a statute limitations that the legislature did not choose to include. *People v. McClure*, 218 Ill. 2d 375, 382 (2006). We review issues of statutory construction *de novo*. *People v. Whitney*, 188 Ill. 2d 91, 98 (1999).

¶ 21    As support for his argument that the use of witnesses at a section 116-3 hearing is not permitted, Barrow points to other decisions in which section 116-3 was at issue and their determination that *de novo* review is appropriate when reviewing the denial of a defendant's request for testing. In *People v. Hockenberry*, 316 Ill. App. 3d 752, 755 (2000), and *People v. Pursley*, 341 Ill. App. 3d 230, 234 (2003), the courts stated that *de novo* review is appropriate when reviewing a trial court's ruling on a section 116-3 motion because the trial court's decision is based upon its review of the pleadings and the trial transcripts and is not based upon its assessment of witness credibility. According to Barrow, because review is based on the pleadings, it necessarily follows that calling witnesses is improper.

¶ 22    Barrow distinguishes *People v. Gibson*, 357 Ill. App. 3d 480, 484 (2005), where the defendant testified at a section 116-3 hearing on the grounds that the State did not object to his testimony. However, whether the State objected does not address the question of whether it was permissible under the statute to call a witness. There is nothing in the plain language of the statute that prohibits the use of witnesses. Other courts that have construed the statute

have not employed a restrictive interpretation. In *People v. Bailey*, 386 Ill. App. 3d 68, 72 (2008), the court determined that the language of the statute did not limit the number of motions for testing that a defendant could file and held that the defendant's second section 116-3 motion was permissible. The reviewing court noted that " '[i]t is not the prerogative of this court to read into the statute limitations that the legislature chose not to include.' " *Bailey*, 386 Ill. App. 3d at 72 (quoting *People v. Rokita*, 316 Ill. App. 3d 292, 303 (2000)). In *People v. Henderson*, 343 Ill. App. 3d 1108, 1115 (2003), the reviewing court determined that section 116-3 does not include language evincing a legislative intent to impose a time limit for filing a motion for forensic testing. In *People v. Travis*, 329 Ill. App. 3d 280, 285 (2002), the reviewing court expressed that limited discovery on chain-of-custody issues may be ordered by the trial court when appropriate.

¶ 23    In accord with other interpretations of the statute, we conclude that the statute does not prohibit the use of witnesses, although it does not expressly permit the use. Moreover, the statute's requirement that the defendant establish a *prima facie* case and that the court determine both that the testing result has the "scientific potential" to produce evidence relevant to the defendant's innocence and that the testing "employs a scientific method generally accepted" suggests that the use of witnesses would assist both the defendant in sustaining his burden and the trial court in making its determinations. 725 ILCS 5/116-3(c) (West 2008). Here, the witness, Anselme, testified whether the requested testing had the scientific potential to produce relevant evidence as to Barrow's claim of actual innocence and the ability of the lab to perform the testing. Under a reasonable interpretation of section 116-3, we find that the State was not precluded from presenting him as a witness and that the trial court did not err in allowing Anselme to testify.

¶ 24    The next issue for our consideration is whether the trial court erred when it denied Barrow's section 116-3 motion for testing of the seat cushion and O'Berto's clothes. Barrow argues that because he established a *prima facie* case under the statute, the trial court should have granted his request for testing of the cushion and clothes. He submits that the trial court improperly considered whether there would be anything to test on the items, rather than whether the tests would produce evidence materially relevant to his claim of innocence.

¶ 25    To successfully bring a motion under the statute, the evidence to be tested must not have been subjected to the now-requested testing at the time of trial, or if it was tested, it is capable of additional testing using a previously unavailable method. 725 ILCS 5/116-3(a) (West 2008). To be entitled to testing, the defendant must present a *prima facie* case that identity was at issue at trial and an adequate chain of custody has been established. 725 ILCS 5/116-3(b) (West 2008). A trial court's ruling on a section 116-3 motion is reviewed *de novo*. *Hockenberry*, 316 Ill. App. 3d at 755.

¶ 26    At the time of Barrow's original trial, DNA testing was not available and the shoes and plywood had not been submitted to the defense expert for testing. The record indicates that identity was at issue in Barrow's original trial and that there was a sufficient chain of custody of the physical evidence. Thus, we consider that the statute was applicable and that Barrow established a *prima facie* case. The next step in the statutory procedure required the trial court to determine that the result of the testing has the "scientific potential" to "produce new, noncumulative evidence materially relevant to the defendant's assertion of actual

innocence" and the testing employs a method generally accepted in the scientific community. 725 ILCS 5/116-3(c) (West 2008). In making its determination, the court should allow testing "under reasonable conditions designed to protect the State's interest in the integrity of the evidence." 725 ILCS 5/116-3(c) (West 2008). Here, there is no issue regarding the integrity of the State's evidence or that the tests requested by Barrow are generally accepted in the scientific community. The State challenged, and the trial court agreed, that Barrow did not demonstrate that testing of the cushion and O'Berto's clothes would produce evidence probative to his claim of actual innocence.

¶ 27    Evidence which is materially relevant is evidence which tends to "significantly advance" a defendant's claim of actual innocence. *Savory*, 197 Ill. 2d at 215. "[T]he term 'actual innocence' limits the scope of section 116-3 to allow for scientific testing only where it has the potential to exonerate a defendant." *People v. Stevens*, 315 Ill. App. 3d 781, 785 (2000). The strength of the State's evidence is not a hurdle the defendant must overcome to meet the statute's requirements. *People v. Urioste*, 316 Ill. App. 3d 307, 312 (2000). In determining whether testing would reveal materially relevant evidence, the trial court considers evidence from the trial and an assessment of the evidence to be tested. *Bailey*, 386 Ill. App. 3d at 75 (quoting *Travis*, 329 Ill. App. 3d at 284).

¶ 28    In denying Barrow's request to test O'Berto's clothes and the seat cushion, the trial court stated that it would need some specifics as to what probative value the testing would reveal, such as evidence of a struggle which would indicate some stains on the evidence could be the perpetrator's blood. Barrow submits that the evidence presented in his trial demonstrated that a struggle ensued at the crime scene and that the State argued as much in its case against him. He maintains that there is sufficient evidence to establish the likelihood that the perpetrator's DNA is on the cushion and O'Berto's clothing.

¶ 29    Initially, Barrow asserts that his inculpatory statements not be considered in reviewing whether the testing would further his claim of actual innocence. His assertion should be rejected. Indeed, his account of the crime to Wrona as evidenced through Wrona's testimony and the recording of the conversation demonstrates that no struggle ensued. He stated that he and his accomplice handcuffed O'Berto immediately upon entry into the house. The crime scene evidence he points to as indicative of a struggle is reasonably explained consistent with his account to Wrona. The bedroom was ransacked in an attempt to find money and other valuables. The living room chair that was minimally out of place could have been moved when O'Berto was dragged to the basement. O'Berto's sock found in the dining room may have slipped off when he was dragged downstairs. Moreover, the State did not rely on evidence of a struggle in prosecuting Barrow, despite its references to a struggle in closing argument. In presenting its case, the State relied heavily at trial on Barrow's own account of the crime as offered through Wrona's testimony and the overhear of Wrona and Barrow's conversation about the murder.

¶ 30    Barrow also challenges the trial court's assessment of Anselme's testimony. His characterization of the testimony is that Anselme did not say there were no useful stains but that he could not identify them. According to Barrow, the trial court should have ordered testing rather than mistakenly accepting Anselme's testimony that the clothes and cushion had no evidentiary value. Barrow's argument is misplaced. The statute does not provide a

general means to discover evidence but rather an avenue to test targeted items that have the potential to provide materially relevant evidence as to a defendant's claim of actual innocence. *People v. Johnson*, 205 Ill. 2d 381, 396-97 (2002) (finding DNA test on Vitullo rape kit had the potential to produce materially relevant evidence); *Hockenberry*, 316 Ill. App. 3d at 759 (DNA testing of samples recovered from defendant and victim would be "materially relevant" to defendant's claim of actual innocence); *People v. Henderson*, 343 Ill. App. 3d 1108, 1121-22 (2003) (ordering testing of bloodstain on defendant's pants and swabs in rape kit).

¶ 31    Here, as provided by Anselme's explanatory testimony, neither the cushion nor the clothes reached even the low standard for testing. Anselme opined that the seat cushion may yield DNA evidence of anyone who ever handled it and that such DNA would not necessarily be linked to the crime. His cursory examination of the cushion revealed blood around the bullet hole which he reasonably assumed would be the victim's blood. He did not see any other stains that he would normally test. In discussing testing of O'Berto's clothes, Anselme indicated that he could not differentiate what stains, if any, were from the perpetrator as opposed to the victim, and that it would be time consuming and expensive to test every stain. Anselme stated that the lab generally would refuse to test such items without information that a suspect had bled, such as when a crime involved a struggle. As discussed above, the evidence does not support the occurrence of a struggle. In addition, Barrow told Wrona that he wore gloves during the entire commission of the crime; thus, it is unlikely his DNA would be on items he handled, including the cushion and O'Berto's clothes.

¶ 32    The absence of Barrow's DNA on the items sought to be tested would not be materially relevant to his claim of actual innocence, particularly in light of the overwhelming evidence of his guilt. Barrow's admissions, which recount specific details of the crime, as well as the circumstantial evidence placing him in the LaSalle-Peru area at the time the crime occurred, constituted the majority of the case against him. Any physical evidence from the items that Barrow seeks to have tested would not significantly advance his claim of actual innocence. *Savory*, 197 Ill. 2d at 215 (section 116-3 motion denied where physical evidence played "minor" role in case against defendant); *Bailey*, 386 Ill. App. 3d at 76-77 (request for section 116-3 testing denied where majority of case was based on defendant's confession and knowledge of the crime scene); but see *Henderson*, 343 Ill. App. 3d at 1121-22 (testing ordered in spite of overwhelming evidence of guilt because results favorable to defendant would significantly advance his claim of actual innocence). The trial court did not err when it denied Barrow's request for testing of the seat cushion and O'Berto's clothes.

¶ 33    The final issue we must determine is whether the trial court erred in denying Barrow's request for further testing of the shoes. Barrow argues that the trial court should have ordered testing of his shoes. He acknowledges that testing was available at the time of his trial but submits that the items were not tested. He further concedes that the testing he requests is not new technology that was unavailable at the time of trial but submits that the shoes were not examined because his defense counsel did not refer them for testing. He maintains that allowing testing of the shoes would conform to the purpose of the statute and would be probative of his claim of actual innocence.

¶ 34    The statute provides for the "performance of fingerprint, Integrated Ballistic

Identification System, or forensic DNA testing, including comparison analysis of genetic marker groupings of the evidence collected by criminal justice agencies" on evidence which was "not subject to the testing which is now requested at the time of trial." 725 ILCS 5/116-3(a) (West 2008). Section 116-3 provides for limited forms of fingerprint, forensic DNA, and ballistic testing. *People v. Pursley*, 407 Ill. App. 3d 526, 528 (2011).

¶ 35    The trial court denied Barrow's request for testing on the shoes because the statute does not allow the requested tests. The statute provides for the "performance of fingerprint, Integrated Ballistic Identification System, or forensic DNA testing." Barrow did not request any of those specific tests in his motion but rather sought an analysis comparing the soles of his shoes to the plywood impression. The plain language of the statute does not provide for the test Barrow is requesting. In *Pursley*, 341 Ill. App. 3d at 234-35, the reviewing court considered whether ballistic testing was covered under the version of the statute in effect at that time. Based on the plain language of section 116-3, the reviewing court held that the statute indicated an intent by the legislature to restrict testing to those based on genetic material. *Pursley*, 341 Ill. App. 3d at 235. The *Pursley* court noted, however, that the statute may eventually include additional forensic tests, such as ballistics testing. *Pursley*, 341 Ill. App. 3d at 235. The statute was later expanded to include ballistics testing but does not provide for any other types of tests. 725 ILCS 5/116-3 (West 2008); *Pursley*, 407 Ill. App. 3d at 528. We find Barrow was not entitled to additional testing of his shoes and the plywood. The trial court properly denied his request.

¶ 36    Morever, the expert Barrow is seeking to have examine the shoes now is the same expert he contacted in 1985 during the trial. It appears that the shoes were scheduled to be examined when Barrow's trial attorney rested without presenting a defense. The tests sought by the defense were never performed as supported by affidavits in the record. However, the State's expert examined and compared Barrow's shoes with the impressions on the plywood and presented his findings at trial. Hunton testified that the size and the pattern of the shoe's sole "could have made the footwear impressions" in the plywood recovered from O'Berto's basement. Because the shoes were previously subjected to some testing and Barrow does not assert that they can be subjected to further testing that was unavailable at the time of trial, the trial court did not err in denying Barrow's request for testing of the shoes on this ground as well.

¶ 37    In his direct appeal, Barrow argued that his trial counsel was ineffective for failing to present a defense, part of which included Barrow's intention to call a witness to testify that the shoe impression found at the scene could not be made by the shoes found in his house. *Barrow*, 133 Ill. 2d at 246-47. The supreme court rejected Barrow's ineffective assistance claim, finding, in part, that even if he presented evidence that weakened the testimony regarding the shoe impression match, "the evidence would [not] have had an appreciable effect on the jury." *Barrow*, 133 Ill. 2d at 250. Based on that ruling, it follows that additional testing on the shoes would not produce materially relevant evidence that significantly advances Barrow's claim of actual innocence. As noted above, the physical evidence was a small part of the case against Barrow, which focused primarily on his admissions to Wrona. More significantly, despite Barrow's claims in his direct appeal, the witness he sought then, and now, to test the shoes did not conclude that Barrow's shoes could not have

made the impression on the plywood since he never examined the shoes. The record indicates that the witness suggested that the unusual arc mark on the sole of one shoe could have been a manufacturing defect, not that it was, in fact, a manufacturing defect.

¶ 38 In summary, we hold that the trial court did not err in allowing the State's use of a witness at the section 116-3 hearing, or in denying Barrow's requests for testing of the seat cushion, victim's clothes, and his shoes.

¶ 39 For the foregoing reasons, the judgment of the circuit court of La Salle County is affirmed.

¶ 40 Affirmed.