# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. English*, 2013 IL App (4th) 120044

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARIO S. ENGLISH, JR., Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0044 |
| Filed | April 17, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of defendant's *pro se* motion seeking fingerprints or forensic testing of a handgun allegedly used in an armed robbery was upheld, since defendant's claim of actual innocence would not be advanced by the lack of his fingerprints on the weapon or the presence of another person's fingerprints, especially when the weapon was recovered more than two weeks after the robbery at issue and there was evidence the weapon had been used in other robberies involving other people during the same period of time. |
| Decision Under Review | Appeal from the Circuit Court of Adams County, No. 00-CF-55; the Hon. William O. Mays, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Karen Munoz, and Lawrence Bapst, all of State Appellate Defender's Office, of Springfield, for appellant.

Jonathan H. Barnard, State's Attorney, of Quincy (Patrick Delfino, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE TURNER delivered the judgment of the court, with opinion.

Presiding Justice Steigmann and Justice Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1        In October 2011, defendant, Mario S. English, Jr., filed a *pro se* motion for fingerprints or forensic testing on a handgun under section 116-3 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/116-3 (West 2010)). In a December 2011 written order, the Adams County circuit court *sua sponte* denied defendant's motion. Defendant appeals, asserting this court should remand the cause for a hearing on the motion's merits because the trial court improperly treated the motion as a postconviction petition. We affirm.

¶ 2                              I. BACKGROUND

¶ 3        Around 12:30 a.m. on November 14, 1999, two armed men entered Cassano's restaurant in Quincy after the restaurant had closed and took money from the restaurant and the employees. In February 2000, the State charged defendant by information with the armed robbery (720 ILCS 5/18-2(a) (West 1998)) of Cassano's. On a pretrial motion, the trial court allowed the State to use evidence of three of the armed robberies that closely matched the *modus operandi* of the Cassano's robbery.

¶ 4        At defendant's May 2002 trial, three employees of Cassano's (James Schmalshof, Brian Postle, and Roger Hokamp) testified two men, one of whom was armed with a gun, entered the restaurant through the back door. According to the employees, the intruders' faces were covered, and they were wearing gloves. The employees gave very similar descriptions of the intruders' height and build.

¶ 5        The State also presented the testimony of defendant's acquaintances, William Raine, Terry Legel, and Chad Dennison. Raine testified he, Legel, and defendant robbed Cassano's. Raine went in the restaurant but could not remember for sure if defendant or Legel went in the restaurant with him. The third person stayed with the car. They used a .380 handgun. Raine also testified about three other robberies (Lone Star, Happy Joe's, and Ganzo's) he

committed that involved defendant and the same .380 handgun.

¶ 6    Legel, defendant's cousin, testified he robbed Cassano's with Raine and Fernando Duarte. According to Legel, he and Raine went into the restaurant while Duarte stayed with the car. However, Legel admitted that in December 1999, he told Detective Bill Thomas defendant participated in the robbery, not Duarte. Legel had explained to Detective Thomas that Raine and defendant went into Cassano's while he remained in the car. Legel further testified he had the .380 Bersa handgun during the Cassano's robbery, which belonged to him, Dennison, and defendant. Moreover, Legel stated he participated in (1) the Lone Star robbery with Jimmy Morgan, Raine, and defendant; (2) the Happy Joe's robbery with Raine, Morgan, and Duarte; and (3) the Ganzo's robbery with Raine, Dennison, and Duarte. All three robberies also involved the .380 Bersa handgun. Legel also admitted he told Detective Thomas that defendant, not Duarte, was involved in the Happy Joe's and Ganzo's robberies. Legel explained he gave Detective Thomas a false statement because Detective Thomas had grabbed him around the neck and slammed him into a corner before the statement. Further, Detective Thomas told Legel that, if he cooperated with Detective Thomas, things would be a lot easier on Legel.

¶ 7    Dennison testified he did not take part in the Cassano's robbery but did take part in the Ganzo's robbery with Raine, Legel, and defendant. A .380 Bersa handgun was used in the Ganzo's robbery. Dennison further testified he was present when defendant purchased the .380 Bersa handgun in late September or early October 1999. According to Dennison, defendant purchased the gun for approximately $120 at an individual's house in Rock Island. Additionally, Dennison stated that, in late November 1999, the police stopped defendant and Dennison in a vehicle defendant was driving. Dennison testified defendant handed Dennison the handgun and told him to run. Dennison testified he ran and dropped the handgun while being pursued by the police. The police then recovered the handgun.

¶ 8    Rock Island police officer Jeffrey Collins testified that, on November 30, 1999, he stopped a vehicle in which defendant was the driver and Dennison was the passenger. No other passengers were in the car. Officer Collins observed Dennison run from the vehicle and then ran after him. When Dennison jumped up on a fence, the handgun fell from the front of Dennison's body. Officer Collins recovered the handgun, which was a Bersa .380 semiautomatic pistol. The officer never observed the gun in defendant's possession.

¶ 9    After hearing all of the evidence, a jury found defendant guilty of the Cassano's robbery. No posttrial motion was filed. In July 2002, the trial court sentenced defendant to 30 years in prison to run consecutive to a sentence in another case. Defendant appealed and argued (1) the trial court denied him a fair trial by forcing defendant to wear an electroshock device during his trial, (2) the court improperly admitted evidence of three other armed robberies allegedly committed by defendant, (3) defendant did not receive effective assistance of counsel, (4) the cumulative effect of the errors in defendant's case denied him a fair trial, and (5) defendant received an excessive sentence. *People v. English*, No. 4-02-0737, slip order at 1 (Dec. 23, 2004) (unpublished order under Supreme Court Rule 23). This court affirmed defendant's conviction and sentence.

¶ 10    In October 2011, defendant filed the section 116-3 motion at issue in this appeal,

asserting fingerprint testing of the gun, clip, and bullets used in the Cassano's robbery would establish he was never in possession of the weapon used in the Cassano's robbery. The motion also asserted that, at the time of defendant's trial, the police had custody of the handgun used in the Cassano's robbery. To his motion, defendant attached (1) a portion of his trial transcript that indicated photographs of the handgun were admitted at his trial and (2) sections of police reports, which noted Raine and Legel told police about the robbery and handgun.

¶ 11        On December 7, 2011, the trial court entered a written order denying the motion. The court stated defendant's motion lacked the necessary allegations to proceed to the second stage of the postconviction proceedings as it failed to state any constitutional violation. It also noted the issue of who actually possessed the handgun at the time of the offense was not a contested issue at defendant's trial.

¶ 12        According to his notarized "proof/certificate of service," defendant placed his notice of appeal in the institutional mail on January 5, 2012, and addressed it to the Adams County circuit clerk. Thus, defendant's notice of appeal was timely filed. See *People v. Smith*, 2011 IL App (4th) 100430, ¶ 13, 960 N.E.2d 595 ("A court will consider an incarcerated defendant's postplea motion timely filed if the defendant placed it in the prison mail system within the 30-day period, regardless of the date on which the clerk's office received or filed-stamped it."). Moreover, defendant's notice of appeal sufficiently complied with Illinois Supreme Court Rule 606 (eff. Mar. 20, 2009). Accordingly, this court has jurisdiction under Illinois Supreme Court Rule 603 (eff. Oct. 1, 2010).

¶ 13                                    II. ANALYSIS

¶ 14        In this appeal, defendant challenges the trial court's denial of his section 116-3 motion, arguing the trial court erred by treating the motion as a postconviction petition and the cause should be remanded for a hearing on the merits of his motion. We review *de novo* a trial court's ruling on a motion for testing under section 116-3 without an evidentiary hearing. *People v. Pursley*, 407 Ill. App. 3d 526, 529, 943 N.E.2d 98, 102 (2011). Moreover, we note this court is not bound by the trial court's reasoning for its judgment and can affirm the trial court's judgment on any ground in the record regardless of whether the trial court relied on it. *People v. Durgan*, 281 Ill. App. 3d 863, 867, 667 N.E.2d 730, 733 (1996). Thus, even if the court did apply the incorrect standard in evaluating defendant's section 116-3 motion, we will affirm the denial if we find that the result would have been the same had the trial court applied the correct standard. See *People v. Travis*, 329 Ill. App. 3d 280, 285, 771 N.E.2d 489, 492 (2002).

¶ 15        Section 116-3 of the Procedure Code (725 ILCS 5/116-3 (West 2010)) provides, in pertinent part, as follows:

"(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint, Integrated Ballistic Identification System, or forensic DNA testing, including comparison analysis of genetic marker groupings of the evidence collected by criminal justice agencies pursuant to the alleged offense, to those of the defendant, to those of other forensic evidence, and to

those maintained under subsection (f) of Section 5-4-3 of the Unified Code of Corrections, on evidence that was secured in relation to the trial which resulted in his or her conviction, and:

(1) was not subject to the testing which is now requested at the time of trial; or

(2) although previously subjected to testing, can be subjected to additional testing utilizing a method that was not scientifically available at the time of trial that provides a reasonable likelihood of more probative results. Reasonable notice of the motion shall be served upon the State.

(b) The defendant must present a prima facie case that:

(1) identity was the issue in the trial which resulted in his or her conviction; and

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.

(c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:

(1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence even though the results may not completely exonerate the defendant;

(2) the testing requested employs a scientific method generally accepted within the relevant scientific community."

Accordingly, to establish a *prima facie* case for forensic testing under section 116-3, "the defendant must show that identity was the central issue at trial and that the evidence to be tested was subject to a sufficiently secure chain of custody." *People v. Johnson*, 205 Ill. 2d 381, 393, 793 N.E.2d 591, 599 (2002). Thereafter, the trial court "must determine whether this testing will potentially produce new, noncumulative evidence that is materially relevant to the defendant's actual-innocence claim." *Johnson*, 205 Ill. 2d at 393, 793 N.E.2d at 599.

¶ 16     On appeal, the State claims defendant's motion fails to state a *prima facie* case because it did not allege (1) the gun was not fingerprint tested at the time of trial and (2) a sufficient chain of custody for the gun. Defendant's *pro se* motion only alleges no fingerprint evidence was presented at his trial and requests analysis on a gun in police custody. Thus, the motion does not even allege in a conclusory fashion the two aforementioned elements required for obtaining section 116-3 relief. Accordingly, the trial court's denial of the motion was proper on that basis alone. See *People v. Franks*, 323 Ill. App. 3d 660, 662, 752 N.E.2d 1274, 1276 (2001) (affirming trial court's denial of section 116-3 motion where the defendant failed to allege one of the elements required for relief).

¶ 17     Defendant points to the record to show a *prima facie* case. Even if that could save his inadequate motion, the record does not help defendant show a *prima facie* case because the gun at issue was evidence in multiple cases involving multiple defendants in counties in both Iowa and Illinois. Therefore, the record in this case or the fact no fingerprint evidence was presented at defendant's trial does not negate the possibility the gun had been tested for

fingerprints at the time of defendant's trial in one of the other many cases involving the gun. As to the custody of the gun, the record only shows that, near the time of defendant's May 2002 trial, the gun was in the possession of the Rock Island County circuit clerk's office, which refused to release it due to a pending appeal. The gun itself was not admitted into evidence in the case at issue.

¶ 18    In support of his argument the record shows a *prima facie* case, defendant cites *Johnson*, 205 Ill. 2d at 394, 793 N.E.2d at 600, in which our supreme court found the defendant had shown the evidence at issue was subject to a sufficiently secure chain of custody. The defendant's petition alleged how the evidence was obtained, to what state agency it was delivered, and the fact the agency would have properly preserved and maintained the evidence. *Johnson*, 205 Ill. 2d at 391, 793 N.E.2d at 598. In response to the State's argument the defendant had presented no evidence of the evidence's location since the defendant's 1984 trial, the supreme court noted such evidence would not be available to the defendant. *Johnson*, 205 Ill. 2d at 394, 793 N.E.2d at 600. The supreme court further noted the evidence, "as a piece of real evidence admitted at trial, would have remained in the custody of the circuit court clerk after the defendant's conviction." *Johnson*, 205 Ill. 2d at 394, 793 N.E.2d at 600.

¶ 19    Here, unlike in *Johnson*, defendant did not even allege a sufficiently secure chain of custody. Moreover, the gun was not admitted into evidence in defendant's case, just photographs of it. The record also does not show the gun was admitted at a trial in one of the cases involving it, as the appeal from the Rock Island County case may have involved a guilty plea. Thus, *Johnson*'s presumption does not apply.

¶ 20    Defendant also cites *People v. Henderson*, 343 Ill. App. 3d 1108, 1116, 799 N.E.2d 682, 690 (2003), which states that, "[i]f the State wishes to object to the section 116-3 request based on insufficient evidence relating to the chain of custody, it should raise that matter in the trial court." However, defendant did not even allege a sufficient chain of custody has preserved the gun. In this case, the State raises the insufficiency of the allegations in the petition as opposed to the insufficiency of the evidence supporting the allegation of a sufficient chain of custody. Thus, *Henderson* is also distinguishable.

¶ 21    Even if defendant's motion was sufficient to make a *prima facie* case for section 116-3 relief, the record does not show "the testing has the scientific potential to produce new, noncumulative evidence that is materially relevant, though not necessarily exonerating, to defendant's claim of actual innocence." *Pursley*, 407 Ill. App. 3d at 532, 943 N.E.2d at 104. Our supreme court has stated "evidence which is 'materially relevant' to a defendant's claim of actual innocence is simply evidence which tends to significantly advance that claim." *People v. Savory*, 197 Ill. 2d 203, 213, 756 N.E.2d 804, 810-11 (2001). The determination of whether evidence is materially relevant to defendant's claim "requires an evaluation of the evidence introduced at trial, as well as the evidence the defendant seeks to test." *Johnson*, 205 Ill. 2d at 396, 793 N.E.2d at 601.

¶ 22    Defendant contends that, under the State's evidence, the gun should have his fingerprints and/or Dennison's fingerprints on it, and if his fingerprints are absent from the gun, it would be materially relevant to his claim he was not involved in the Cassano's robbery. Moreover,

if another person's fingerprints are recovered from the gun, it would go even further to bolster his defense Legel, Raine, and Dennison were fabricating their testimony to cover for another person. We disagree.

¶ 23    If defendant's fingerprints are absent from the gun, it would not undermine any of the State's evidence as to the events of the Cassano's robbery. The evidence at trial showed three people participated in the Cassano's robbery, two entered the restaurant and one person stayed in the car. Only one of the robbers had the gun, and both robbers were wearing gloves. Legel admitted he was the person that had the gun during the Cassano's robbery. Thus, if the gun did not have defendant's fingerprints, it would not eliminate him as one of the participants in the Cassano's robbery. Moreover, a lack of defendant's fingerprints would have little or no impact on the State's collateral evidence of defendant handing Dennison the gun in the vehicle shortly before the police recovered it. Officer Collins testified he did not see defendant in possession of the gun when he stopped the vehicle, and thus the lack of defendant's fingerprints would be cumulative of evidence at defendant's trial. Further, other evidence connected defendant to the gun at issue. Officer Collin's testimony showed defendant's association with Dennison, who had possession of the gun used in the Cassano's robbery. Moreover, Dennison and Legel testified defendant bought the gun. Therefore, a lack of defendant's fingerprints on the gun would not significantly advance defendant's claim of actual innocence.

¶ 24    If the gun had fingerprints of another party, it again would have little to no impact on defendant's case. The gun was recovered more than two weeks after the Cassano's robbery, and the evidence showed the gun had been used in three other robberies during that period of time. Legel admitted using the gun in the three other robberies. The evidence also showed the same group of people were not always involved in the robberies. Thus, the existence of another person's fingerprints would also not significantly advance a claim of actual innocence.

¶ 25                                    III. CONCLUSION

¶ 26    For the reasons stated, we affirm the Adams County circuit court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 27    Affirmed.