NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180376-U

NO. 4-18-0376

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 9, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| ROBERT D. JONES, | ) | No. 94CF451 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Esteban F. Sanchez, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Knecht and Holder White concurred in the judgment.

**ORDER**

¶ 1 *Held:* The appellate court affirmed the trial court's denial of defendant's motion for additional DNA testing because defendant did not show that further testing would have the potential to produce evidence that would significantly advance his claim of actual innocence.

¶ 2 In August 1996, a jury found defendant, Robert D. Jones, guilty of first degree murder (720 ILCS 5/9-1(a) (West 1992)) for the 1992 killing of Dr. Henry Street Dickerman Jr. That conviction was later reversed and the case remanded by this court. See *People v. Jones*, 294 Ill. App. 3d 1125, 721 N.E.2d 863 (1998) (table) (1998) (unpublished order under Supreme Court Rule 23). In June 1998, a jury again found defendant guilty of first degree murder.

¶ 3 In October 2014, defendant filed a petition for deoxyribonucleic acid (DNA) testing on various objects from Dickerman's bathroom, car, and body. In August 2015, the trial court granted that petition and ordered such testing.

¶ 4        In May 2017, defendant filed a motion to proceed *pro se*, which the trial court granted. In July 2017, defendant filed a motion for production of evidence and to resume DNA testing. The court denied that motion, and this appeal followed.

¶ 5        Defendant appeals, arguing that the trial court erred by denying his request for additional DNA testing on a hair and a glove because the court had previously granted defendant's request for DNA testing under section 116-3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/116-3 (West 2016)). We disagree and affirm.

¶ 6                              I. BACKGROUND

¶ 7        In August 1996, a jury found defendant guilty of first degree murder (720 ILCS 5/9-1(a) (West 1992)) for the 1992 killing of Dickerman. This court later reversed that conviction and remanded the case for a new trial. *Jones*, slip order at 17.

¶ 8        In June 1998, the trial court conducted defendant's second jury trial. The identity of the killer was at issue in the trial. A jury again found defendant guilty of first degree murder.

¶ 9        In July 2012, defendant *pro se* filed a motion for DNA testing, seeking testing on evidence from Dickerman's bathroom, car, and body.

¶ 10        In October 2014, defendant, through counsel, filed a petition for DNA testing, requesting testing for items found in (1) the area where Dickerman's body was found, (2) Dickerman's bathroom, and (3) Dickerman's car. The petition asserted that only one item, the bathroom rug, had previously been tested and new DNA methodologies justified further testing of the rug. The petition asserted that all other requested items had never been tested for DNA. The petition detailed why testing was justified and noted that the Illinois Innocence Project would pay for testing using a grant.

¶ 11        In January 2015, the trial court conducted a hearing at which it heard arguments

from both parties. The following day, the court entered a docket entry stating, "[T]he results of forensic DNA testing may potentially produce previously untested evidence materially relevant to Defendant's innocence claim." In August 2015, the court entered an order for testing.

¶ 12       In December 2016, Bode Cellmark Forensics produced a forensic case report in which it documented (1) a "sealed paper envelope containing possible head hair," (2) a "rug from rest room," (3) Dickerman's wristwatch, and (4) two separate bags containing Dickerman's clothing. Cellmark processed several hairs found on these objects and also developed a DNA profile for defendant.

¶ 13       In January 2017, counsel for defendant explained to the trial court that he had spent $22,000 on testing 10 items, 3 of which were used to attempt to create a victim profile or reference sample. However, the grant from the Illinois Innocence Project had expired, and therefore, they would not be able to pay for further testing but would make suggestions of further items to be tested.

¶ 14       In May 2017, defendant filed a motion to proceed *pro se*, which the trial court granted in June 2017. In July 2017, defendant filed a motion for production of evidence and for additional DNA testing, as well as a motion for an evidentiary hearing, asserting that DNA evidence had been concealed or destroyed.

¶ 15       In December 2017, the trial court conducted a hearing on defendant's motion, and defendant described the objects he wanted to be tested. Defendant wanted "further testing" on a hair found with Dickerson's remains that was negative for male DNA. He believed that the Illinois Innocence Project's conclusion that the hair was irrelevant because it had female DNA was wrong, and defendant believed it could be evidence of "foul play." Defendant also wanted a glove found in Dickerman's car to be tested.

¶ 16        The State argued that the hair was found with Dickerson's remains and noted that (1) Dickerson's body was found by hikers and (2) therefore, the hair could have come from any hiker in that area. Last, the State argued that if DNA evidence was found on the glove from the car, it could have come from a friend or a relative, and it could not be proven that it came from a perpetrator of the crime.

¶ 17        The trial court agreed with the State and noted that defendant's request sounded "like a fishing expedition" and that "[t]here needs to be some type of threshold argument so the Court can make a finding that potentially the testing of this evidence leads us somewhere." Accordingly, the court denied defendant's request for testing.

¶ 18        This appeal followed.

¶ 19                              II. ANALYSIS

¶ 20         Defendant argues that the trial court erred by denying his request for additional DNA testing on a hair and a glove because the court had previously granted defendant's request for DNA testing under section 116-3 of the Code (725 ILCS 5/116-3 (West 2016)). We disagree and affirm.

¶ 21                              A. The Law

¶ 22        Section 116-3 of the Code does not provide a general means to discover evidence. *People v. Barrow*, 2011 IL App (3d) 100086, ¶ 30, 954 N.E.2d 895. To require testing, a defendant must show that the testing has the scientific potential to produce new, noncumulative evidence that is materially relevant, though not necessarily exonerating, to defendant's claim of actual innocence. *People v. Savory*, 197 Ill. 2d 203, 213, 756 N.E.2d 804, 810-11 (2001); *People v. English*, 2013 IL App (4th) 120044, ¶ 21, 987 N.E.2d 1058. Evidence is considered materially relevant if it tends to significantly advance the claim of actual innocence. *People v. Snow*, 2012 IL

- 4 -

App (4th) 110415, ¶ 65, 964 N.E.2d 1139. An appellate court reviews *de novo* a trial court's denial of a motion for testing pursuant to section 116-3. *People v. Gawlak*, 2019 IL 123182, ¶ 25, 131 N.E.3d 477.

¶ 23                                        B. This Case

¶ 24        In this case, defendant contends that his request for additional testing should have been granted because (1) the trial court originally granted his request for testing and (2) nothing had changed since that original request to justify altering that decision. We disagree.

¶ 25        Critically, the Illinois Innocence Project had 10 items tested, and the tests did not turn up fruitful results. It was not inconsistent for the trial court to conclude initially that testing those items might produce materially relevant evidence but conclude afterwards that continuing would be a "fishing expedition." The court can and should consider that years of labor, $22,000, and 10 tests were poured into defendant's requests for DNA testing, and yet defendant and his attorneys were unable to come up with any evidence that significantly advanced the claim of defendant's actual innocence.

¶ 26        Even if testing of the hair and glove revealed the same female DNA profile, such evidence would do little to advance defendant's claim. At best, that would be evidence that Dickerson (1) came into contact with a woman and (2) that woman left her glove in his car. We conclude that this falls short of the requirement of significantly advancing defendant's claim of actual innocence.

¶ 27                                        III. CONCLUSION

¶ 28        For the reasons stated, we affirm the trial court's judgment.

¶ 29        Affirmed.