2022 IL App (1st) 192400-U

No. 1-19-2400

Order filed February 23, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 375 |
| | ) | |
| TIMOTHY ALEXANDER, | ) | Honorable |
| | ) | Neera Walsh |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Gordon and Justice McBride concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Affirmed. Circuit court properly denied defendant's motion for fingerprint and DNA testing, as motion did not allege that firearm and ammunition he was convicted of possessing were subject to sufficient chain of custody, and testing would not produce new, noncumulative, materially relevant evidence.

¶ 2     Defendant Timothy Alexander appeals from the circuit court's denial of his motion for fingerprint and DNA testing under section 116-3 of the Code of Criminal Procedure of 1963. See 725 ILCS 5/116-3 (West 2018). We find no error and affirm.

¶ 3    After a bench trial, defendant was found guilty of armed habitual criminal (AHC), armed violence, two counts of unlawful use of a weapon by a felon (UUWF), and possession of cannabis with intent to deliver. The trial court merged the counts into the AHC count and imposed 17 years' imprisonment.

¶ 4    At trial, Chicago police officer Desai (whose first name was not in the record) testified that he helped execute a search warrant at an apartment on the 7000 block of South Justine Street in Chicago, around 1 a.m. on December 3, 2011. Upon entry, Desai saw defendant, whom Desai identified in court, run to a bedroom in the back of the residence in only his underwear. Desai lost sight of defendant for a few seconds when defendant entered the bedroom. Desai followed and found defendant sitting on a daybed couch. Another fully-clothed person was in the room. A scale and bags of suspect cannabis sat on a coffee table. Desai and his partner arrested defendant and the other man. Desai advised them of their rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant indicated he understood, and Desai escorted him from the bedroom.

¶ 5    On cross-examination, Desai testified that about five other people were in the apartment's common room when he entered, and he did not notice defendant holding anything as defendant ran to the bedroom. The clothed man, Antonio Larry, also sat on the daybed couch.

¶ 6    Chicago police officer Kasper (whose first name likewise is not in the record) testified that he saw Desai and Desai's partner detain defendant and another man in the bedroom. The bedroom contained male clothing, keys for the front door, a credit card in defendant's name on top of a fake fireplace, and 11 documents bearing defendant's name, including a gas bill and credit card bill addressed to defendant at the residence. Kasper recovered the scale and suspect cannabis from the table and more suspect cannabis behind the couch. A firearm was also found

behind artificial logs in the fake fireplace. At trial, the prosecutor stated that he was "handling" the firearm, and "show[ing]" it to a courtroom deputy to ensure it was safe.

¶ 7    Next, the prosecutor showed Kasper the firearm exhibit and Kasper identified an evidence recovery envelope from the police station containing a brown envelope in which Kasper placed the firearm when he recovered it. At trial, the prosecutor stated that he was "retriev[ing]" the brown envelope from the evidence envelope and directed Kasper's attention to the "inside" of the envelope, which Kasper testified contained the firearm.

¶ 8    Kasper also identified a smaller brown envelope which contained seven bullets, and testified that when he recovered the firearm, it held one of the bullets in the chamber and six in the magazine. When Kasper recovered the firearm, he "pulled out the magazine, ejected the round and *** took the magazine [and] unloaded it, put the bullets inside the brown envelope and *** put the gun inside this brown envelope." He kept the firearm and bullets until he inventoried them at the station. On cross-examination, Kasper testified that he never saw defendant hold the firearm.

¶ 9    Chicago police officer David Madia testified that he helped execute the search warrant and learned from Desai that Desai had *Mirandized* defendant. Afterwards, Madia and another officer interviewed defendant at the police station. Defendant admitted to selling cannabis. Defendant further stated that he had recently purchased the firearm for protection when a boy was shot, and he was attempting to separate himself from a gang.

¶ 10    On cross-examination, Madia testified that neither he nor the other interviewing officer *Mirandized* defendant, and Madia did not videotape defendant's statement or have him give a handwritten statement. Madia relayed defendant's statement to another officer, who authored the arrest report.

¶ 11    The State entered certified statements of defendant's convictions for attempt murder and manufacture and delivery of a controlled substance. The State also entered a stipulation that a forensic chemist would testify that the portion of suspect cannabis that she tested was positive for cannabis and weighed 65.3 grams.

¶ 12    Defendant testified that he lived at the apartment on the 7000 block of South Justine. On the night of December 2, 2011, he and his roommate hosted a poker game for several people, including Larry. Defendant went to the rear bedroom around 11 or 11:30 p.m., smoked marijuana, and fell asleep in his underwear and t-shirt. Around 1 or 1:15 a.m., defendant heard the door crash open. Larry ran into the bedroom, stated the police had arrived, and hid a firearm in the fake fireplace. Officer Desai entered and asked Larry why he ran. Then Desai allowed defendant to dress and escorted them from the bedroom. Defendant denied that Desai *Mirandized* him and denied speaking with Officer Madia. He had never seen the firearm before and denied that he was trying to leave a gang, but admitted that he sold cannabis. Defendant could not run when he was arrested because of a leg injury.

¶ 13    On cross-examination, the prosecutor showed defendant the firearm, and the court admitted the exhibit comprising the firearm and ammunition into evidence. The prosecutor asked if the court wanted to see the weapon, but the court responded that it could "see it from here." Defendant confirmed that he slept in the rear bedroom. On redirect examination, defendant testified that he did not have a firearm because it would enhance his sentence were he convicted of an offense.

¶ 14    In rebuttal, the State entered defendant's convictions for manufacture and delivery of cannabis and possession of a controlled substance.

¶ 15    In closing arguments, the State argued that, had Larry ran into the room when the police arrived, he would not have had time to hide the firearm in the fireplace. The State further argued that defendant's habitation in the bedroom was circumstantial evidence he possessed the firearm, that defendant admitted possession to Officer Madia, and that defendant's testimony contradicting Madia was incredible.

¶ 16    The court found defendant guilty. The court stated that it found the officers' testimony credible and defendant contradictory testimony incredible. The court merged the other counts into the count for AHC and sentenced defendant to 17 years' imprisonment. The record does not contain an impound order for the firearm and ammunition.

¶ 17    Defendant appealed, arguing that the trial court improperly considered his prior convictions when imposing sentence, and that his mittimus and fines and fees order were incorrect. We amended the mittimus, modified the fines and fees order, and otherwise affirmed. *People v. Alexander*, 2015 IL App (1st) 132167-U.

¶ 18    On December 29, 2016, defendant filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2016)). Defendant alleged that (1) trial counsel was ineffective for failing to challenge his UUWF convictions under *People v. Aguilar*, 2013 IL 112116; (2) his convictions violated the one-act, one-crime doctrine; (3) the trial court improperly considered his prior convictions in imposing sentence; (4) trial counsel was ineffective for failing to investigate or have the firearm tested for fingerprints; (5) the trial court erred, and trial counsel was ineffective, for allowing officers to testify that defendant was *Mirandized* and made undocumented inculpatory statements; and (6) appellate counsel was ineffective for failing to raise these claims on direct appeal.

¶ 19    The circuit court dismissed the petition as frivolous and patently without merit. On appeal, we allowed counsel to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and affirmed. *People v. Alexander*, No. 1-17-1025 (2019) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 20    On December 31, 2018, defendant filed a *pro se* motion under section 116-3 of the Code (725 ILCS 5/116-3 (West 2018)) to test the firearm and ammunition for fingerprints and DNA. Defendant alleged that the firearm and ammunition were never tested, and though he submitted a *pro se* pretrial motion for testing, the court did not hear the motion because he was represented by counsel, who did not move for testing. Defendant argued that fingerprint and DNA testing could show that the firearm was only handled by Antonio Larry, whose fingerprints and DNA, along with defendant's, were in the records of the Illinois Department of Corrections. According to defendant, if testing showed Larry's fingerprints and DNA on the weapon, and the absence of defendant's fingerprints and DNA, it would support his defense that he lacked knowledge of the firearm, enhance his credibility, and show that he was actually innocent of his offenses.

¶ 21    On July 10, 2019, the State moved to dismiss defendant's request. The State argued that testing could not produce new, noncumulative, materially relevant evidence because defendant was convicted under a constructive possession theory. Moreover, defendant had not shown that any fingerprint or DNA evidence on the firearm and bullets was not contaminated when those items were recovered or used as exhibits during trial. The State attached four pages of the transcript from Kasper's trial testimony, wherein the prosecutor stated that he was showing the firearm to the courtroom deputy to ensure its safety and showed the firearm, ammunition, and envelopes to Kasper for identification.

¶ 22   On August 20, 2019, the circuit court denied defendant's motion. The court noted that multiple people handled the firearm at trial, diminishing the forensic value of any fingerprint evidence.

¶ 23   On appeal, defendant argues that the weapon and ammunition have been subject to a sufficient chain of custody to preserve DNA and fingerprint evidence because they were admitted as exhibits at trial. According to defendant, if his fingerprints or DNA are absent from the items and Larry's are present, it would support defendant's claim that he is innocent, as where no witnesses saw him handle the weapon, Larry was in the bedroom where the firearm was found, and defendant denied making an inculpatory statement.

¶ 24   The State argues that defendant has not made a *prima facie* showing that the firearm and ammunition were not contaminated when recovered or introduced at trial, and that testing could not produce materially relevant evidence because, at most, it would impeach Madia's testimony that defendant admitted to possessing the weapon, and defendant was convicted under a "constructive possession" theory.

¶ 25   Under section 116-3 of the Code of Criminal Procedure, a defendant may move to obtain scientific testing of physical evidence that was not previously tested. 725 ILCS 5/116-3(a)(1) (West 2018). The defendant must make a *prima facie* showing that identity was at issue at his trial and "the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect." *Id.* § 116-3(b). If a defendant establishes a *prima facie* case, the circuit court must evaluate whether the requested testing is likely to produce new, noncumulative evidence that is materially relevant to the defendant's claim of actual innocence. *People v. Stoecker*, 2014 IL 115756, ¶ 26; see also 725 ILCS 5/116-3(c)(1)(i) (West 2018). The circuit court must also determine whether the

7

requested testing employs a generally accepted scientific method. 725 ILCS 5/116-3(c)(2) (West 2018).

¶ 26    Our review of a ruling under section 116-3 is *de novo*. *Stoecker*, 2014 IL 115756, ¶ 21. We may affirm on any basis in the record. *People v. Johnson*, 2019 IL App (1st) 162999, ¶ 49.

¶ 27    Here, the State agrees that the firearm and bullets have never been tested for fingerprints or DNA. The State further concedes that identity was an issue at defendant's trial, as defendant argued that Larry, not defendant, possessed the firearm. See *People v. Cocroft*, 2020 IL App (1st) 180056, ¶ 21 ("a defendant makes a sufficient showing that identity was at issue when he denied at trial that he committed the crime"). Therefore, to determine whether defendant has made a *prima facie* case for DNA testing, we must decide whether he has shown that the items were subject to a sufficient chain of custody. 725 ILCS 5/116-3(b)(2) (West 2018).

¶ 28    While defendant argues on appeal that the firearm and ammunition were subject to a sufficient chain of custody because they were admitted into evidence at trial, at the outset, we would note that his motion did not allege, even in conclusory fashion, that a sufficient chain of custody exists. The motion did not claim, for example, that the firearm and ammunition were admitted as exhibits at trial, nor did defendant argue that the firearm and ammunition have been in the custody of the State or the court since they were recovered from defendant's apartment.

¶ 29    The motion alleged only that the firearm and ammunition were not tested previously and that the results would implicate Larry and exonerate defendant. As defendant failed to plead that the evidence was subject to a sufficient chain of custody, his motion was arguably insufficient to obtain relief on that ground alone. See *People v. English*, 2013 IL App (4th) 120044, ¶¶ 16-20 (finding motion for fingerprint or forensic testing on firearm insufficient when motion failed to

"even allege in a conclusory fashion" that the firearm was not fingerprint tested at time of trial or subject to sufficient chain of custody).

¶ 30    We recognize that our supreme court has "held that a defendant is excused from establishing a chain of custody for evidence that was admitted at his or her trial, since, presumably, the admitted evidence would have remained within the custody of the circuit court clerk." *People v. Kines*, 2015 IL App (2d) 140518, ¶ 29 (citing *People v. Johnson*, 205 Ill. 2d 381, 393 (2002)). But even if we construed defendant's motion liberally in view of this principle—and overlooked that the record lacks an impound order—we cannot say that defendant has met the remainder of section 116-3's strictures.

¶ 31    Most notably, defendant must show that fingerprint and DNA testing could produce new, noncumulative evidence that is materially relevant to defendant's assertion of innocence. 725 ILCS 5/116-3(c) (West 2018). Evidence need not "completely exonerate" the defendant to be materially relevant. *Id.* § 116-3(c)(1)(i). "[R]ather, it must tend to 'significantly advance' his claim of actual innocence." *Stoecker*, 2014 IL 115756, ¶ 33. A determination of whether testing would significantly advance defendant's claim requires evaluating the evidence introduced at trial as well as the firearm and ammunition. *Id.*

¶ 32    When, as here, a defendant is not found in actual possession of contraband, the State must prove constructive possession, which occurs when the defendant knows of the contraband's presence and exercises immediate, exclusive control over the area where the contraband is found. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. "Habitation in the premises where contraband is discovered is sufficient evidence of control to constitute constructive possession," and "[k]nowledge may be shown by evidence of a defendant's acts, declarations, or conduct

from which it can be inferred that he knew the contraband existed in the place where it was found." *Id.*

¶ 33    Here, defendant's knowledge of the firearm and ammunition was shown by Madia's testimony that defendant admitted purchasing the firearm. His control was shown by the evidence that he resided where the firearm was found, including his testimony that he lived in the residence and slept in the rear bedroom; Desai's testimony that he was discovered in the bedroom; and Kasper's testimony that the bedroom contained male clothing, as well as a credit card and 11 documents bearing defendant's name, including a gas bill. See *id.* ("Proof of residency in the form of rent receipts, utility bills and clothing in closets is relevant to show the defendant lived on the premises and therefore controlled them" (internal quotation marks omitted)). Further, the bedroom contained cannabis and a scale, and defendant testified that he sold cannabis.

¶ 34    Given that no witness saw defendant handle the firearm or ammunition, the absence of his fingerprints or DNA would not materially advance his claim that he did not constructively possess them. See *English*, 2013 IL App (4th) 120044, ¶ 23 (absence of fingerprints on firearm was cumulative, as no witness saw defendant handle firearm); see also *People v. Peeples*, 205 Ill. 2d 480, 538 (2002) (lack of fingerprints at crime scene would not establish defendant's absence from crime scene because "it may indicate that he either was careful not to leave fingerprints or that any fingerprints that were left were unsuitable for comparison").

¶ 35    We would further note that the trial record demonstrates that the prosecutor "handled" the weapon before handing it to the sheriff's deputy to ensure it was safe to handle in court, not to mention that Officer Kasper handled the gun before trial and during trial. The record does not indicate that any of these individuals wore gloves or handled the evidence through the envelopes.

The handling of the evidence by others may have altered the fingerprints or DNA present. See *People v. Lewis*, 2019 IL App (1st) 160705, ¶¶ 44 (handling of firearm at earlier trial would have diminished value of fingerprint testing).

¶ 36 Nor would the presence of Antonio Larry's fingerprints or DNA on the firearm or ammunition materially advance defendant's claim. See *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 43 (noting it is "settled law that constructive possession of contraband can be established even where possession is joint or others have access to the area where the contraband is recovered"). As noted, Madia testified that defendant admitted to purchasing the firearm, and the evidence showed that defendant resided in the bedroom. Further, while defendant testified that he did not know of the firearm's presence until Larry ran into the bedroom and hid it in the fireplace, Desai testified that it was defendant who, in his underwear, ran into the bedroom when Desai entered the residence, and defendant also testified that he was wearing underwear when the officers arrived. Thus, fingerprint and DNA testing on the firearm and ammunition would not produce new, noncumulative, materially relevant evidence of defendant's actual innocence.

¶ 37 Defendant compares his case to *People v. Hockenberry*, 316 Ill. App. 3d 752 (2000). In *Hockenberry*, the defendant was convicted of home invasion and aggravated criminal sexual assault. *Hockenberry*, 316 Ill. App. 3d at 754. The defendant admitted that he was in the home but denied having sexual contact with the victim. *Id.* The victim testified that she had sexual intercourse with another individual prior to the alleged assault. *Id.* at 757. We found that DNA testing of semen found on the victim's vaginal swabs, underwear, and bed sheet could produce materially relevant evidence, even though a non-match between the defendant and the semen would not necessarily exonerate him, because it would nonetheless support the defendant's testimony that he did not have sexual contact with the victim. *Id.* at 759.

¶ 38    Here, in contrast, a fingerprint or DNA test favorable to defendant would still not significantly advance his claim of innocence, in contrast to evidence of another person's DNA in a sexual-assault test. As noted, defendant's personal handling of the firearm was not essential to the State's case, as the theory under which defendant was convicted did not require proof that he personally handled the contraband or that no one else handled the contraband, and defendant's statement to Madia was the crux of the State's case. See *People v. Savory*, 197 Ill. 2d 203, 214-16 (2001) (testing to discover source of bloodstain would not produce materially relevant evidence where bloodstain was minor evidence compared to defendant's knowledge of crime scene and inculpatory statements); *People v. Travis*, 329 Ill. App. 3d 280, 284-85 (2002) (citing *Savory* to distinguish *Hockenberry*, where evidence sought to be tested was minor compared to defendant's confession to police).

¶ 39    For a similar reason, defendant's reliance on *People v. Shum*, 207 Ill. 2d 47, 65-66 (2003), *People v. Henderson*, 343 Ill. App. 3d 1108, 1113, 1119-20 (2003), and *People v. Rokita*, 316 Ill. App. 3d 292, 294-95, 302 (2000)) also fails. In each of those cases, this court reversed the denial of requests for initial or new DNA testing where the evidence of the defendants' guilt of sexual assault crimes largely rested on the victims' and witnesses' identifications of the defendants as the perpetrators, and the defendants did not give incriminating statements. Here, as noted, the evidence of guilt consisted of defendant's habitation in the bedroom where the firearm was found and his admission to Madia that he purchased the firearm. So testing the firearm and ammunition would not produce evidence materially relevant to defendant's claim of actual innocence. The circuit court properly denied defendant's motion for testing.

¶ 40    The judgment of the circuit court is affirmed.

¶ 41    Affirmed.