NOTICE

Decision filed 06/06/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230468-U

NO. 5-23-0468

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 05-CF-467 |
| | ) | |
| JUAN REYES, | ) | Honorable |
| | ) | Karen E. Wall, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the trial court's denial of defendant's *pro se* motion for DNA, ballistic, and forensic testing, where defendant failed to satisfy his required burden under section 116-3 of the Code.

¶ 2    Defendant, Juan Reyes, appeals from the trial court's order denying defendant's *pro se* motion for DNA, ballistic, and forensic testing. On appeal, defendant argues that the court erred, where defendant met the statutory elements entitling him to forensic testing under section 116-3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/116-3 (West 2020)). For the following reasons, we affirm.

¶ 3                                    I. Background

¶ 4    We recite only those facts relevant to the issues on appeal, provided previous appeals have set forth in great length the details of defendant's case. See *People v. Reyes*, 4-07-0412 (2008)

1

(unpublished order under Illinois Supreme Court Rule 23); *People v. Reyes*, 2016 IL App (4th) 130279-U; *People v. Reyes*, 2022 IL App (4th) 210541-U; see also *Reyes v. Nurse*, 38 F.4th 636 (7th Cir. 2022).

¶ 5   In January 2007, the trial court held defendant's jury trial, where the State presented evidence that, on January 28, 2004, defendant and five other men agreed to rob a known marijuana supplier, William Thomas, and split the proceeds. At the time of the incident, Timothy Landon, a marijuana dealer who relied on Thomas for his supply, visited Thomas's home on January 28, 2004, for the day. Around 9 p.m., defendant and several codefendants arrived at Thomas's home by van. After they arrived, defendant and Andre Smith entered Thomas's home armed with guns. Shortly thereafter, a physical altercation ensued, which resulted in Thomas's death and extensive injuries to Landon. Following the close of evidence, a jury found defendant guilty of first degree murder of Thomas (720 ILCS 5/9-1(a)(1) (West 2002)), attempted first degree murder of Landon (*id.* §§ 8-4(a), 9-1(a)(1)), aggravated battery with a firearm (*id.* § 12-4.2(a)(1)), and home invasion (*id.* § 12-11(a)(5)). The trial court subsequently sentenced defendant to life in prison for the murder of Thomas, a second life sentence to run consecutively for the home invasion, and a consecutive term of 30 years in prison for the attempted murder of Landon. Our colleagues in the Fourth District affirmed defendant's convictions on direct appeal. See *Reyes*, No. 4-07-0412.

¶ 6   Following several prior appeals, defendant filed a *pro se* motion for DNA, ballistic, and forensic testing on November 4, 2022, pursuant to section 116-3 of the Code. Defendant requested DNA testing of all Landon's clothing, specifically referencing Landon's t-shirt, that investigators obtained following the shooting. Defendant alleged that DNA testing would demonstrate "residue around the bullet hole is gun powder residue," which would corroborate Investigator Keith Garrett's January 28, 2004, police report, that the shooter shot Landon within "close range" by

2

"press[ing] [the gun] against Mr. Landon's stomach." Defendant further alleged that the DNA testing, in combination with Investigator Garrett's police report, would contradict Landon's trial testimony that the gunman stood six to eight feet away from Landon near a television at the time of the shooting. Defendant argued that "[w]hen firing a weapon from six to eight feet away[,] the gun powder would spread out." Defendant argued that the requested DNA testing had scientific potential to produce new, noncumulative evidence materially relevant to defendant's continued assertion of actual innocence. Defendant also requested ballistic testing on a .38-caliber firearm and three spent bullets found at the crime scene to determine whether the three spent bullets came from the same .38-caliber firearm discovered in Thomas's master bedroom.

¶ 7 On November 9, 2022, the State filed a motion to deny defendant's *pro se* motion for DNA, ballistic, and forensic testing. First, the State clarified that defendant, "in actuality, *** request[ed] that the shirt in question be submitted for either gunshot residue testing and/or a gunshot stippling analysis," not DNA testing on genetic material. The State argued that section 116-3(a) of the Code did not authorize gunshot residue and stippling testing. Rather, section 116-3(a) of the Code allowed " 'the performance of fingerprint, Integrated Ballistic Identification System, or forensic DNA testing.' " Next, the State argued that investigators did not find a .38-caliber firearm and that three spent .38-caliber bullets had been subject to testing at the time of defendant's trial. The State argued that, even if defendant meant to reference the Colt .357 revolver, defendant failed to meet his burden under section 116-3 of the Code.

¶ 8 On December 12, 2022, defendant filed a *pro se* motion to amend his motion for DNA, ballistic, and forensic testing. Defendant argued that Landon's identification of defendant was unreliable. Defendant specifically asserted that Landon was the only person who stated defendant shot him and the only person who placed defendant in Thomas's home on the night of the shooting.

3

Defendant argued that he satisfied the requirements of section 116-3(b)(1) of the Code by presenting a *prima facie* case that Landon's identification of defendant resulted in defendant's conviction and that the testing had the scientific potential to produce new, noncumulative evidence materially relevant to defendant's continued assertion of actual innocence. Defendant also requested to "add more evidence to be tested in [defendant's] original motion." Specifically, defendant requested testing of all Landon's and Thomas's clothing for gunshot residue or stippling around the bullet hole. Next, defendant requested DNA testing of a black baseball hat found in the snow outside of Thomas's home and "apparent hairs, fibers, and debris collected" from the inner hat band. Defendant also requested testing of two .38-caliber bullets and to have ".38 ammunition *** fired out of the Colt .357 firearm to have clear conf[i]rmation that a Colt .357 is capable of firing a .38 round of ammunition." Lastly, defendant requested fingerprint analysis of "[t]hree separate lifts from [a] television screen."

¶ 9 On December 13, 2022, the State filed a response to defendant's *pro se* amended motion. The State argued, "[f]or the very same reasons articulated in the [State's] original motion to deny the defendant's request," that section 116-3(a) of the Code did not authorize gunshot residue and stippling testing. With regard to testing of the black hat, bullets, gun, and fingerprint lifts, the State argued that defendant failed to convince the trial court that the result of the requested testing would have scientific potential to produce new, noncumulative evidence.

¶ 10 On May 24, 2023, the trial court held a hearing on defendant's amended motion. Defendant appeared *pro se*, arguing that, because of technological advancements, he requested testing of the "black baseball hat with apparent hair in it." Defendant then stated that he requested DNA testing of all clothing worn by Landon and Thomas to contradict Landon's trial testimony. In addition, defendant argued that the requested DNA testing on Landon's sweater would support his claim of

4

actual innocence and show inconsistencies in Landon's testimony. Lastly, defendant argued that advancements in testing since the time of his trial in 2007 would determine if the .38-caliber bullets came from the same gun, stating:

> "[T]hey have two bullets that have like five land grooves and right hand twists, then they got like another bullet with three land grooves with a right hand twist which is *** clearly two different guns, but I need to somehow prove exactly if these are or not because the *** ballistic lady that was testifying said that she cannot say that it came from the same gun or a different gun. So, again, *** the technology has changed a lot so that's why I need it tested now."

¶ 11    Following defendant's arguments, the trial court denied defendant's motion. The court reiterated the State's argument concerning DNA testing of Landon's t-shirt and Thomas's clothing for gunshot residue, stating:

> "[T]he purpose of the testing to be done is to establish the gunshot residue on the clothing and then [defendant] thinks that that's going to show something about distance that the shots were done and I don't think that that is going to give him the answers that he's looking for. Again, DNA testing tests genetic material, human material."

Next, the court determined that defendant failed to demonstrate that the black hat could be subject to testing by a method not available at the time of defendant's trial and that testing would provide probative results. With regard to the bullets, firing a .38-caliber bullet from the Colt .357 revolver, and fingerprint analysis on three lifts from a television, the court determined that the defendant failed to demonstrate that the items could be subject to retesting or testing by a method not available at the time of defendant's trial, and that there would be some probative results from the testing. Defendant filed a timely notice of appeal.

5

¶ 12                                    II. Analysis

¶ 13    At issue in this case is whether defendant fulfilled the requirements set forth for postconviction testing under section 116-3 of the Code. Section 116-3(a) of the Code allows a defendant to move for postconviction fingerprint, ballistic, and DNA testing "on evidence that was secured in relation to the trial or guilty plea." 725 ILCS 5/116-3(a) (West 2020). The evidence to be tested, however, must not have been "subject to the testing which is now requested at the time of trial," or if "previously subjected to testing, can be subjected to additional testing utilizing a method that was not scientifically available at the time of trial that provides a reasonable likelihood of more probative results." *Id.* § 116-3(a)(1), (2). "Under the plain language of the statute, defendants seeking additional testing of evidence which has already been subjected to testing have a greater burden to establish their case than those defendants whose evidence has not been tested." *People v. Stoecker*, 2014 IL 115756, ¶ 26. To obtain testing, a defendant must present a *prima facia* case that identity was at issue at his trial and that the evidence to be tested had been under a secure chain of custody in connection with the original trial. *Id.*; 725 ILCS 5/116-3(b) (West 2020). Testing is permitted if, among other requirements, " 'the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence' " (*Stoecker*, 2014 IL 115756, ¶ 19 (quoting 725 ILCS 5/116-3(c)(1) (West 2008)) and the testing requested employs a scientific method generally accepted within the relevant scientific community (725 ILCS 5/116-3(c)(2) (West 2020)). A ruling on a motion for postconviction DNA testing is reviewed *de novo*. *People v. Brooks*, 221 Ill. 2d 381, 393 (2006); *People v. Shum*, 207 Ill. 2d 47, 65 (2003).

¶ 14    In the present case, defendant's motion requested DNA testing of gunshot residue and stippling on all of Landon's and Thomas's clothing. The State responds, arguing that section 116-

6

3 of the Code does not authorize testing for gunshot residue and stippling. We agree with the State. Section 116-3 of the Code allows for "fingerprint, Integrated Ballistic Identification System, or forensic DNA testing, including comparison analysis of genetic marker groupings of the evidence collected by criminal justice agencies pursuant to the alleged offense, to those of the defendant," not gunshot residue or stippling. 725 ILCS 5/116-3(a) (West 2020). Defendant's request does not pertain to DNA testing and, thus, is unauthorized by section 116-3 of the Code. Thus, defendant is not entitled to relief under section 116-3 of the Code.

¶ 15    Next, defendant requested DNA testing of "apparent hairs, fibers, and debris collected" from the inner band of a black baseball hat. The record indicates that the parties stipulated that Alissa E. Shofkom, a DNA analyst II, would testify that People's Exhibits 22a or 22b, which were DNA swabs taken from the inner hat band and manufacturer's tag of the inside of the black baseball hat, contained insufficient material for testing. Pursuant to section 116-3(a)(2) of the Code, defendant must show that, "although previously subjected to testing, [the items] can be subjected to additional testing utilizing a method that was not scientifically available at the time of trial that provides a reasonable likelihood of more probative results." *Id.* § 116-3(a)(2). Our supreme court in *Stoecker*, 2014 IL 115756, ¶ 24 (citing 725 ILCS 5/116-3(a)(2) (West 2008)), determined that subsection (a)(2) of the Code requires that a motion seeking retesting show that the requested test "(i) was not scientifically available at the time of trial; and (ii) provides a reasonable likelihood of more probative results than the previous testing." Our supreme court highlighted that "a defendant must show that the additional testing is likely to produce more probative results than the previous tests." *Stoecker*, 2014 IL 115756, ¶ 26. Thus, "[t]he analysis in subsection (a)(2) *** involves comparing the respective probative values of the two tests." *Id.*

¶ 16    After examining defendant's motion, we find his motion failed to plead, pursuant to section 116-3(a)(2), that new testing has the potential to produce more probative results than the original testing that showed insufficient material existed for testing. We, thus, find defendant's conclusory allegation that "[t]oday's DNA testing methods can generate a robust genetic profile with less material" lacks any specificity as to the testing he requests and is thus insufficient to obtain relief under section 116-3 of the Code.

¶ 17    Defendant also requested ballistics testing of .38-caliber bullets and a determination as to whether a Colt .357 revolver could fire .38 bullets. Defendant acknowledges that his *pro se* motion did not request testing of the evidence through the Integrated Ballistic Identification System (IBIS). Defendant, however, argues that his request for testing implicates the same purpose of IBIS testing, that is, to determine if the Colt .357 revolver fired the recovered bullets and to show defendant's innocence since the murder weapon was not identified. The State responds, arguing that defendant's motion and argument at the May 24, 2023, hearing did not request submission of the evidence to IBIS. We agree with the State. The record demonstrates that defendant, at no point, requested IBIS testing of the requested evidence before the trial court. Thus, for the first time on appeal, defendant argues that the evidence should be tested "because the testing was not done previously [through IBIS]." Nevertheless, we will address defendant's claim on appeal, where he seeks the same relief as that sought at the trial court, that is, the testing of the ballistics evidence.

¶ 18    We first note that legislation amended section 116-3 of the Code in October 2007, following defendant's January 2007 trial, to include IBIS testing. See Pub. Act 95-688 (eff. Oct. 23, 2007); see *People v. Pursley*, 407 Ill. App. 3d 526, 528 (2011). Although the bullets were subject to testing at the time of defendant's trial, IBIS testing was not a method authorized by section 116-3 of the Code at the time of defendant's trial. Section 116-3 of the Code allows a

defendant to have physical evidence subjected to scientific testing not available at the time of trial if certain requirements are met, including that "the result of the testing has scientific potential to produce new, noncumulative evidence *** materially relevant to the defendant's assertion of actual innocence." 725 ILCS 5/116-3(c)(1) (West 2020). Evidence that is materially relevant is evidence that tends to "significantly advance" a defendant's claim of actual innocence. *People v. Savory*, 197 Ill. 2d 203, 215 (2001).

¶ 19    IBIS serves as a nationwide computerized database for firearms, bullets, and cartridge casings. *Pursley*, 407 Ill. App. 3d at 533. The IBIS compares ballistic signatures of fired bullets and cartridge casings to each other and can discover links between crimes that otherwise would remain hidden. *Id.* Defendant argues that ballistic analysis through IBIS technology has the potential to identify the firearm used in the crime and compare it to the Colt .357 found at the scene. Defendant asserts that if IBIS testing reveals the Colt .357 matches the ballistic signatures associated with the murder weapon, the evidence "directly undermines the State's case against [defendant]," which would cast doubt on the State's "narrative and raise significant questions about [defendant's] alleged involvement in the crime." We cannot agree.

¶ 20    Defendant fails to take into account that finding him guilty of first degree murder and attempted first degree murder did not hinge on ballistics or connecting defendant to a specific murder weapon. Instead, the State charged defendant, and the trial court instructed the jury, that defendant's guilt could be established based on the theory of accountability for the acts of his codefendants. The witness testimony presented by the State demonstrated that defendant and five other individuals organized a plan to rob Thomas, a known marijuana supplier, after they learned that Thomas had a large amount of weed and money at his home. The State presented evidence and testimony demonstrating that two shooters—defendant and Smith—entered Thomas's home

9

together. Moreover, multiple witnesses stated that two armed robbers entered Thomas's home, and the evidence demonstrated that multiple bullets from two different guns killed Thomas and injured Landon. In addition, the State presented testimony of two codefendants, Joseph Hernandez and Alex Garcia, who testified that defendant entered Thomas's home alongside Smith, and Hernandez testified that he fled to a nearby street after he heard gunshots. Moreover, following the shooting, Smith ran back to the van, stating that "Reyes shot the guy" following a physical altercation. Defendant returned to the van after Smith with blood on his clothing. According to Garcia, defendant shot Thomas after Thomas attacked him, Smith also shot Thomas, and defendant and Smith both "shot another guy [Landon] running out of the house." Based on the foregoing, we cannot conclude that the evidence defendant seeks to test is materially relevant to his claim of actual innocence. As such, defendant is not entitled to relief under section 116-3 of the Code.

¶ 21    Lastly, defendant argues that fingerprint analysis of "[t]hree separate lifts from [a] television screen" could "significantly bolster" defendant's claim of actual innocence in this case if the testing shows the presence of another individual at the scene. We first note, however, that defendant's *pro se* motion failed to allege the elements for obtaining section 116-3 relief. In addition, defendant also failed to provide any argument before the trial court at the May 24, 2023, hearing on his motion to support his request for testing. See *People v. English*, 2013 IL App (4th) 120044, ¶ 16. Deficiencies aside, we find defendant's argument unpersuasive. Even assuming that the television contained the fingerprints of another unknown individual, this, alone, would not significantly bolster defendant's claim of actual innocence, where the evidence and testimony of multiple witnesses demonstrates that defendant was present in Thomas's house on the night of the shooting. As such, defendant is not entitled to relief under section 116-3 of the Code.

¶ 22                                    III. Conclusion

¶ 23    For the reasons stated, we affirm the trial court's denial of defendant's *pro se* motion for

DNA, ballistic, and forensic testing.


¶ 24    Affirmed.