2025 IL App (2d) 240297-U
No. 2-24-0297
Order filed May 16, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-1506 |
| RICHARD SCHMELZER, | ) ) ) | Honorable Elizabeth K. Flood, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Because this appeal presents no issue of potential merit, we allow appellate counsel to withdraw, and we affirm the judgment.

¶ 2    After a jury trial, defendant, Richard Schmelzer, was found guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2012)) for the stabbing death of his grandmother, Mildred Darrington. He was sentenced to 45 years in prison. On direct appeal, defendant challenged only the sufficiency of the evidence to convict him, and this court affirmed. See *People v. Schmelzer*, 2020 IL App (2d) 170284-U. Thereafter, defendant filed motions for forensic testing of hair and a knife found in his home after the murder. The trial court denied the motions. Defendant timely

appealed, and the court appointed the Office of the State Appellate Defender. The appellate defender now moves to withdraw, arguing that there are no potentially meritorious issues for appeal. We agree, grant the motion, and affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The evidence at trial is detailed in our order addressing the sufficiency of the State's evidence to convict. See *Schmelzer*, 2020 IL App (2d) 170284-U, ¶¶ 6-44. We provide only the background necessary to resolve counsel's motion to withdraw.

¶ 5     On July 18, 2014, at around 9:30 a.m., Darrington was found dead in her East Dundee home. She had a fatal stab wound to her neck. "In sum, the State's theory was that, for financial gain, defendant drove from his home in Texas to Illinois on July 17-18, 2014, murdered Darrington, and immediately returned to Texas." *Id.* ¶ 4. The State's evidence was entirely circumstantial: (1) defendant was in the vicinity of Darrington's home during the period when she was murdered; (2) defendant arranged for a family member to rent a car for defendant to drive from Texas to Arizona, but instead defendant drove to Illinois and back; (3) defendant had significant financial problems; (4) defendant stood to inherit a significant sum of money from Darrington and was a beneficiary of her life insurance policy; (5) defendant had a key to Darrington's home, there were no signs of forced entry, and the interior of the home was undisturbed; and (6) defendant gave the police an alibi—he was attending a conference in Texas—that was falsified during the investigation.

¶ 6     On August 20, 2014, the police searched defendant's home and found a duffel bag, and inside was a Ziploc bag containing a Recon 1 folding knife with a straight edge (the knife). A hair was found on the edge of the knife. The hair and the knife were packaged separately for testing. The hair was later determined to be of Caucasian origin, but there was insufficient DNA in the hair

root for a suitable comparison. Both the knife and the duffel bag tested negative for the presence of blood. The knife was not swabbed to determine if there was DNA from sources other than blood. Forensic scientist Blake Aper explained why:

"[W]e were looking for any blood staining that could have been from the victim. Typically, if someone were to be stabbed or cut with a knife, they're going to leave behind blood. Considering I did not find any blood, I didn't reasonably think that I would find any DNA from other types of, let's say skin cells or something from the victim, if there was no blood present on that blade."

¶ 7    Dr. Mitra Kalelkar performed an autopsy on Darrington. According to Kalelkar, there was a 3-inch-long stab wound that went 2.5 inches deep into Darrington's neck, ending at the spine and severing her left jugular vein. The deep stab wound had sharp lines and was inflicted with considerable force by a sharp instrument. The State showed Kalelkar the knife and asked whether it could have caused the lethal stab wound. She answered yes, because the knife was sharp and a sharp instrument made the wound. When the State asked whether the knife size was significant, Kalelkar answered, "This size perfectly fits the wound also." However, on cross-examination, Kalelkar clarified that she had not taken a cast of the wound and did not have the knife with her during the autopsy. Thus, when she said that the knife "perfectly fit[ ]" the wound, she did not mean that the knife would "perfectly fit[ ] *in* the wound" (emphasis added) but that the knife "could perfectly cause [the] injury." Specifically, the knife "could have caused [the injury] because it's a sharp instrument ***." Kalelkar agreed that the State did not show her any other knives and that "there were no knives found at [Darrington's] residence."

¶ 8    In its initial closing argument, the State did not mention the knife. In the defense's closing argument, counsel noted Aper's testimony that the knife was not tested completely for DNA. In

rebuttal, the State remarked, "[W]e've got the knife.  Where did we find the knife?  We found the knife in the duffel bag in the defendant's bedroom."  The State also disputed defense counsel's suggestion that the knife was not tested adequately for DNA.

¶ 9    On direct appeal, we found the circumstantial evidence sufficient to sustain defendant's conviction. *Id.* ¶ 14.  Recognizing that there was "no forensic evidence (such as DNA, fingerprints, etc.) directly linking defendant to the murder," we said:

> "the jury could have reasonably determined that the knife found in defendant's bag was more likely to have committed a stab wound of the width and depth suffered by Darrington than those found in her home.  Based on this court's review of the record, the photographed knives from Darrington's home consisted solely of standard dining knives and a few with serrated edges.  According to Kalelkar, the stab wound was 'sharp,' not jagged consistent with a serrated knife.  It was also a few inches wide, which was consistent with the size of the straight-edged knife found in a Ziploc bag in a duffle bag in defendant's home." *Id.* ¶ 53.

We added that, "although no DNA was suitable for comparison, a human, Caucasian, head hair was found on defendant's knife, which the jury could have found notable, given that Darrington, who was Caucasian, was stabbed in the neck." *Id.*

¶ 10    On August 22, 2023, defendant filed two motions: a "Motion for DNA Testing of Blood on Hair on [the] Knife" and a "Motion for Forensic Mass Spectrometry and Liquid Chromatography" for the hair on the knife.  Defendant asserted that mass spectrometry and liquid chromatography would show that the hair "[did] not belong to [Darrington]," as it "lack[ed] the medications and hair dye used by her."  On February 24, 2024, defendant filed a "Motion for Forensic Study of the *** Knife's Toolmarks and Internal Wound Measurements Produced by a

Single Stab at 90 [degrees] to a Plastic or Other Human Analog to a Depth of 2½ inches." The

State moved to strike or deny the motions. In his reply, defendant said:

"[t]he showing of the blood on the hair not matching [Darrington] and the hair not having

the same chemical make up [*sic*], [*i.e.*,] medications and hair dye, would show that the hair

does not belong to [Darrington], and that the knife *** is not the murder weapon as claimed

by the State, and show the Defendant's innocence."

¶ 11    On April 5, 2024, following a hearing, the trial court struck defendant's motions "and

therefore denie[d] [defendant's] motion for such testing ***." Defendant timely appealed.

¶ 12                                    II. ANALYSIS

¶ 13    Per *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and *People v. Lee*, 251 Ill. App. 3d 63

(1993), the appellate defender moves to withdraw as counsel. In her motion, counsel states that

she read the record and found no issue of arguable merit. Counsel further states that she advised

defendant of her opinion. Counsel supports her motion with a memorandum of law providing a

statement of facts, a list of potential issues, and arguments as to why those issues lack arguable

merit. We advised defendant he had 30 days to respond to the motion. Defendant did not respond

to the merits.

¶ 14    Appellate counsel identifies two potential issues but contends that neither has arguable

merit: (1) whether DNA testing of blood on the hair found on the knife might materially advance

defendant's claim of actual innocence and (2) whether other forensic testing of the hair (mass

spectrometry and liquid chromatography) or forensic testing of the toolmarks on the knife might

materially advance defendant's claim of actual innocence.

¶ 15    Section 116-3(a) of the Code of Criminal Procedure (725 ILCS 5/116-3(a)(1) (West 2022))

provides:

"(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint, Integrated Ballistic Identification System, or forensic DNA testing, including comparison analysis of genetic marker groupings of the evidence collected by criminal justice agencies pursuant to the alleged offense, to those of the defendant, to those of other forensic evidence, and to those maintained under subsection (f) of Section 5-4-3 of the Unified Code of Corrections, on evidence that was secured in relation to the trial or guilty plea which resulted in his or her conviction, and:

(1) was not subject to the testing which is now requested at the time of trial; or

(2) although previously subjected to testing, can be subjected to additional testing utilizing a method that was not scientifically available at the time of trial that provides a reasonable likelihood of more probative results."

To obtain the requested testing, the defendant must satisfy the foregoing requirements plus present a *prima facie* case that (1) identity was the issue at trial and (2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or materially altered. *Id.* § 116-3(b)(1), (2).

¶ 16 If a *prima facie* case is established, the trial court shall allow the testing if the "result of the testing has the scientific potential to produce new, noncumulative evidence *** materially relevant to the defendant's assertion of actual innocence where the defendant's conviction was the result of a trial, even though the results may not completely exonerate the defendant[.]" *Id.* § 116-3(c)(1). Materially relevant evidence is evidence that tends to significantly advance a defendant's claim of actual innocence. *People v. Savory*, 197 Ill. 2d 203, 213 (2001). Whether the evidence at issue is

materially relevant to actual innocence requires consideration of the trial evidence as well as the evidence the defendant is seeking to test. *Id.* at 214. A reviewing court reviews *de novo* the denial of a motion for forensic testing under section 116-3. *People v. Stoecker*, 2014 IL 115756, ¶ 21.

¶ 17    Appellate counsel argues that there was no basis for DNA testing of "[b]lood on [h]air on [the] [k]nife." Counsel asserts that "there was no evidence presented that there was ever any blood located on the hair that was recovered from [the knife]." "Additionally," counsel states, "the knife that the human hair was found on also tested negative for the presence of blood." However, counsel overlooks that the hair was removed from the knife before the latter was tested for blood. Apparently, although the hair root was subjected to DNA testing, and a suitable profile was not obtained, the hair was not also tested specifically for the presence of blood. The absence of blood on the knife would not necessarily mean the absence of blood on the hair. Nevertheless, defendant did not show that testing the hair for the presence of blood could potentially produce evidence materially relevant to his assertion of actual innocence. Although, as we mentioned on direct appeal, the jury might have found it "notable" that Caucasian hair was found on a weapon that possibly was used to stab the Caucasian victim (*Schmelzer*, 2020 IL App (2d) 170284-U, ¶ 53), the absence of blood on the hair would hardly have been more remarkable than the absence of blood on the knife, in the face of the substantial circumstantial evidence of defendant's guilt. It would be interesting, perhaps, if blood from a third person were found on the hair, but it would not be more consequential than if no blood had been found. After all, the defense's theory was never that the State alleged the wrong murder victim. In any event, foreign material on the knife would not be unexpected given the weeks that had passed since the incident.

¶ 18    There is also no arguable merit to defendant's claim that use of mass spectrometry and liquid chromatography on the hair could potentially yield evidence to materially advance his claim

of actual innocence. First, a court cannot order testing not specified in section 116-3 (see *People v. Barrow*, 2011 IL App (3d) 100086, ¶ 35), and mass spectrometry and liquid chromatography are not specified there. Second, even if that testing method showed that the hair did not contain the substances known to have been applied to Darrington's hair, such a result would not materially advance defendant's claim of actual innocence. The mere fact that the hair on the knife was not Darrington's would not be consequential, as the State never established that the hair *was* Darrington's. Further, the fact that the hair belonged to someone other than Darrington would not have necessarily shown that the knife was not the murder weapon, particularly where the knife was found in an unsealed duffel bag almost a month after the incident. Third, the hair did not play a meaningful role in the State's case, because of the other significant circumstantial evidence.[1] Thus, any hair testing would not have significantly aided the claim of actual innocence. See *id.* ¶ 32 ("The absence of [the defendant's] DNA on the items sought to be tested would not be materially relevant to his claim of actual innocence, particularly in light of the overwhelming evidence of his guilt. [The defendant's] admissions, which recount specific details of the crime, as well as the circumstantial evidence placing him in the LaSalle-Peru area at the time the crime occurred, constituted the majority of the case against him. Any physical evidence from the items that [the defendant] seeks to have tested would not significantly advance his claim of actual innocence."); *People v. Bailey*, 386 Ill. App. 3d 68, 76 (2008) (same). For these reasons, it would be frivolous to argue that further forensic testing of the hair on the knife might have produced evidence materially advancing defendant's claim of actual innocence.

---

[1]Indeed, we noted on direct appeal that a "significant portion of the trial related to the State's theory that defendant was motivated to murder Darrington to obtain his inheritance." *Schmelzer*, 2020 IL App (2d) 170284-U, ¶ 39.

¶ 19    We turn last to defendant's claim that forensic testing of the knife might produce evidence materially relevant to actual innocence.  In that regard, defendant sought to have the knife tested to determine whether it would have produced a wound consistent with the lethal wound to Darrington's neck.

¶ 20    First, such testing is not specified in section 116-3 and, therefore, cannot be ordered.  See *Barrow*, 2011 IL App (3d) 100086, ¶ 35.  Second, even if such testing showed that the knife could not have caused the lethal wound to Darrington's neck, that result would not materially advance defendant's claim of actual innocence, because the State did not conclusively show at trial that the knife was the one used in the murder.  The knife was found several weeks after the incident and had no blood on it.  Kalelkar was asked about the knife, but, when pressed, her opinion was nothing more definitive than that the knife was sharp enough to cause Darrington's wound.  On direct appeal, we commented that the jury could have reasonably found that the knife was the weapon used to kill Darrington.  *Schmelzer*, 2020 IL App (2d) 170284-U, ¶ 53.  We did not thereby imply that defendant could not have killed Darrington with a different knife; such a position would not have been consistent with Kalelkar's testimony, the remaining evidence, or common sense.  The knife might have satisfied a certain appetite for evidentiary completeness, but it ultimately contributed little to the State's case.  This likely explains why the State omitted mentioning the knife in its initial closing argument.  Any forensic proof that the knife was not the murder weapon would not have materially advanced the defendant's claim of actual innocence, given the remaining, compelling circumstantial evidence.  See *Barrow*, 2011 IL App (3d) 100086, ¶ 32; *Bailey*, 386 Ill. App. 3d at 76.  Thus, there is no arguable merit to defendant's claim that further forensic testing of the knife might have produced evidence that would materially advance his claim of actual innocence.

¶ 21                               III. CONCLUSION

¶ 22     After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel that this appeal presents no issue of arguable merit.  Thus, we grant the motion to withdraw, and we affirm the judgment of the circuit court of Kane County.

¶ 23     Affirmed.